[No. A057234. First Dist., Div. Three. Nov. 12, 1993.]

EVAN R. FLAVELL, Plaintiff and Appellant, v.
CITY OF ALBANY et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts V and VI.

COUNSEL

Cheasty, Davis & Pollack and Harry Pollack for Plaintiff and Appellant.

Robert Zweben, City Attorney, for Defendants and Respondents.

OPINION

MERRILL, J.—Appellant Evan R. Flavell filed a petition for writ of mandate and a complaint for declaratory relief against the City of Albany seeking to invalidate Ordinance No. 91-04 which amends the city's residential off-street parking requirements.[1] The trial court denied the petition and granted judgment in favor of the city. We affirm.

I

In 1978, residents of Albany approved "Measure D," an initiative amending the city's zoning ordinance to increase residential off-street parking requirements from one (1) space per unit to two (2) spaces per unit. Measure D provides a limited exception to the requirement. In a section entitled "Special Reduction," it states: "The Planning Commission may by Conditional Use Permit reduce the parking requirements . . . to no fewer than one and one-half (1-1/2) spaces per unit upon making the finding that existing on-street parking is sufficient to justify a reduction." The two-for-one requirement was codified as section 20-3.5 c.1 of the zoning ordinance; while the Special Reduction exception became former section 20-3.5 d.3.

Prior to the passage of Measure D, the zoning ordinance required one parking space per residential unit with one notable exception. This exception, entitled "Planning Commission," was contained in former section 20-3.5 d.2 of the ordinance and stated as follows: "The Planning Commission may waive or reduce the parking requirements contained in paragraph c upon making the finding that space is not available to provide the required

---

[1] There are other named defendants in the action as well including the Albany City Council, individual council members, and the city's planning director. For purposes of brevity and convenience, we will refer to them collectively as "the city."

parking facilities, except that off-street parking requirements may be reduced but shall not be waived for new structures." Although Measure D enacted the two-for-one requirement along with the Special Reduction exception, it did not eliminate the Planning Commission exception. The two-for-one requirement and the Special Reduction exception, passed by voters, were simply added to the zoning ordinance alongside the preexisting Planning Commission exception. Both parties are in agreement upon this fact. Noting the variance between the two provisions—one providing for only a very limited reduction, the other providing for a reduction or waiver of parking requirements—the city, after 1978, interpreted them in such a way as to avoid any conflict. Measure D and the Special Reduction exception were applied to all *new* residential units (i.e., ones constructed following passage of the initiative); and the preexisting Planning Commission exception was applied only in situations not involving new units.

In 1991, the Albany City Council adopted Ordinance No. 91-04, further amending the parking requirement provisions of the city's zoning ordinance. In keeping with Measure D, it retains the two-for-one parking requirements for new residential units (still codified as section 20-3.5 c.1). It modifies the Planning Commission exception by providing that for "[m]inor [a]dditions [w]here [n]o [n]ew [d]welling [u]nits [a]re [c]reated" (i.e., the addition of floor space by no more than 10 percent or 120 square feet), no additional parking spaces are required (§ 20-3.5 d.1(a)); and for other "additions where no new dwelling units are created," the city planning commission retains authority to waive or reduce the two-for-one requirements, but only upon consideration of certain newly specified circumstances (§ 20-3.5 d.1(b)). The ordinance also restates the Special Reduction exception as follows: "Where New Dwelling Units Are Created. Special Reduction enacted by Measure D, 1978. The Planning Commission may, by conditional use permit, reduce the parking requirement contained in paragraph c, 1 to no fewer than one and one-half (1-1/2) spaces per dwelling unit upon making the finding that existing on-street parking is sufficient to justify a reduction." (§ 20-3.5 d.1(c).

II

In 1990, appellant filed an application with the city for permission to convert a single-family home into a two-family dwelling unit. The application included a request for a waiver of the parking requirements. The application was denied.

In 1991, appellant filed another application regarding another property, a multiunit building. Appellant, again, sought permission to add a new unit to

the property including a waiver of parking requirements. He argued that he was entitled to such a waiver under the Planning Commission exception of the zoning ordinance (Ordinance No. 91-04 had not been adopted as yet). This application was denied as well. Thereafter, appellant filed an action in superior court contesting the denial of his application.

In the meantime, the Albany City Council adopted Ordinance No. 91-04 as described above. The record indicates that appellant opposed the new ordinance during the review process. Upon passage of the new law, appellant filed the instant action. His contentions are essentially that the city, in passing the subject ordinance, violated the California Environmental Quality Act (CEQA);[2] local planning ordinance procedures; the California Elections Code; and the Albany general plan. Appellant sought a writ of mandate directing the city to rescind the ordinance; a declaration that the ordinance is invalid; and an injunction enjoining the city from approving any permits under the ordinance. The trial court ruled in favor of the city on all issues, and this appeal followed.

### III

 Appellant maintains that with the passage of Ordinance No. 91-04, the city effectively amended Measure D without the authority to do so, a violation of the California Elections Code.[3] We find no merit in this contention.

The issue is one of construction. Appellant argues that voters intended Measure D's two-for-one parking spaces requirement, along with the one and one-half parking spaces Special Reduction exception, to apply to all residential units, both new and existing ones. He contends that Ordinance No. 91-04 amends Measure D in two respects: First, by providing that the Special Reduction exception applies only "[w]here [n]ew [d]welling [u]nits [a]re [c]reated" (§ 20-3.5 d.1(c)), and second, by enacting a new exception which permits a waiver or reduction of required parking spaces for "[a]dditions [w]here [n]o [n]ew [d]welling [u]nits [a]re [c]reated," upon consideration of certain newly specified circumstances (§ 20-3.5 d.1(b)). The city, meanwhile, argues that voters intended Measure D to apply only to new residential units. The trial court agreed with the city.

As can be seen, appellant's argument stands or falls on his interpretation of Measure D. As the issue involves purely a question of law, we are not

---

[2] In the unpublished part of this opinion, we find that Ordinance No. 91-04 does not violate CEQA.

[3] Section 4013 of the California Elections Code provides in pertinent part: "No ordinance proposed by initiative petition . . . adopted by the voters, shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance."

bound by the trial court's finding. ■ In interpreting the voter initiative, we are mindful that "[t]he construction of a municipal initiative or ordinance is governed by the same rules as the construction of statutes. [Citations.]" (*C-Y Development Co.* v. *City of Redlands* (1982) 137 Cal.App.3d 926, 929 [187 Cal.Rptr. 370].) The cardinal rule in this respect is that ". . . a statute must be read and considered as a whole in order that the true legislative intention may be determined. The various parts of a statute must be construed together, and harmonized, so far as it is possible to do without doing violence to the language or to the spirit and purpose of the act, so that the statute may stand in its entirety. [Citations.]" (*Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal.App.3d 557, 569 [89 Cal.Rptr. 897].)

Moreover, "[t]he contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized. [Citations.]" (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].)

■ Applying these principles to the case at bar, it seems clear that the city's interpretation of Measure D is the correct one—that is, Measure D applies to new residential units only. First of all, when considering the two-for-one requirement in the context of the initiative as a whole, it is apparent that this, along with other features of Measure D, is aimed strictly at new residential development. According to the record, the stated objective of the proponents of Measure D was to curb the development of multiunit residences in favor of single-family homes in order to "restore a reasonable balance between single and multipleunit homes" in the City of Albany and "to halt the steady increase in congestion on . . . city streets." The initiative seeks to do this by (1) conditioning the approval of a proposed multiunit development on the consent of a majority of the residents living within 300 feet of the proposed development; (2) the stricter 2-for-1 parking requirements; and (3) limiting housing density on the east side of Albany Hill to 18 units per acre as opposed to the existing 35-unit-per-acre standard. These elements of Measure D are prospective in nature and relate to future development.

Second, the city's interpretation serves to harmonize Measure D with other parts of its zoning laws, in particular what we have referred to as the Planning Commission exception to the city's parking requirements. Under the city's interpretation, the planning commission retains its pre-Measure D authority to waive or reduce parking requirements in the case of housing additions which do not, in and of themselves, constitute new residential units. The city has harmonized Measure D with existing law in this way

since the passage of the initiative in 1978. Under the legal principles outlined above, the city's practice in this regard is entitled to great weight.

Having found appellant's interpretation of Measure D erroneous, it follows that his allegations regarding Ordinance No. 91-04 are flawed as well. We find the addition of the phrase, "[w]here [n]ew [d]welling [u]nits [a]re [c]reated," to the Special Reduction exception under the ordinance, to be in accordance with the voters' mandate.

## IV

■ Appellant next challenges Ordinance No. 91-04 as it relates to the city's general plan.[4] He urges that the housing element of the general plan is legally inadequate, thus rendering the general plan and the ordinance themselves invalid. The alleged inadequacy of the housing element stems from the fact that (1) it has not been revised since its adoption on January 7, 1985, whereas Government Code[5] section 65588 requires such elements to be revised not less than every five years; and (2) it does not contain a five-year schedule of actions to implement goals as required by section 65583, subdivision (c).[6]

We reject appellant's argument as he has failed to establish a "nexus" between the claimed deficiency in the plan and the subject ordinance.

In *Garat v. City of Riverside* (1991) 2 Cal.App.4th 259 [3 Cal.Rptr.2d 504], plaintiffs attacked the City of Riverside's general plan in an attempt to invalidate a city land-use ordinance which had the effect of protecting certain lands reclassified as residential/agricultural from "premature" development. In their lawsuit, plaintiffs alleged that the plan was legally inadequate in that: the land-use element did not include standards of building intensity recommended for nonresidential categories of land use; the housing element failed to include quantified objectives for the provision of housing

---

[4]"Government Code section 65300 requires each county and city to 'adopt a comprehensive, long-term general plan for the physical development of the county or city . . . .' The general plan has been identified as being 'atop the hierarchy of local government law regulating land use' and has been analogized to 'a constitution for all future developments.' [Citation.] The general plan consists of 'a statement of development policies . . . diagrams and text setting forth objectives, principles, standards, and plan proposals' and must include, at a minimum, the following seven elements: land use, circulation, housing, conservation, open space, noise, and safety. (Gov. Code, § 65302.)" (*Kings County Farm Bureau v. City of Hanford* (1990) 221 Cal.App.3d 692, 742 [270 Cal.Rptr. 650].)

[5]Unless otherwise indicated, all further statutory references are to the Government Code.

[6]We grant the city's request to take judicial notice of the fact that it has adopted a new general plan since the filing of this action. However, we agree with appellant that the new plan does not render these arguments moot. (See *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 541 [277 Cal.Rptr. 1, 802 P.2d 317].) It should be noted in this respect, that our discussion of Albany's general plan pertains to the plan in existence at the time the instant petition was filed in superior court.

for all income levels; the noise element did not provide noise contours for local industrial plants or state policies to minimize the exposure of residents to excessive noise; the circulation element was not reflective of the changes in land use since 1981; and, finally, there were inconsistencies within and between the various elements.[7]

The Garat court rejected plaintiffs' challenge on the grounds that they had failed to establish a nexus between the claimed legal inadequacies of the land use, housing, circulation and noise elements of Riverside's general plan and the policies and geographical areas implicated by the adoption of the new ordinance.

Applying *Garat* to the case at bench, we find appellant's assault fatally deficient as well in that he has failed to establish *any* nexus between the claimed legal inadequacies in the general plan (i.e., lack of revision of the housing element within a five-year period and lack of a five-year schedule of actions) and Ordinance No. 91-04. As can be seen, appellant's attack concerns certain time-related inadequacies rather than actual substantive inadequacies. In order to invalidate Ordinance No. 91-04 on this basis, however, appellant must do more than simply point out these inadequacies. He must, in addition to this, establish (1) that these omissions have resulted in certain consequences, and (2) how the ordinance is affected by these consequences. In our case, appellant has made no showing as to how the inadequacy of failing to timely revise the element would have any bearing or effect on the ordinance.

## V, VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VII

The judgment is affirmed.

White, P. J., and Chin, J., concurred.

---

[7]*Garat* points out that there is a presumption of validity as to a city's legislative enactments and that the burden is on the one challenging the enactments to establish their inadequacy and to further establish a nexus between the inadequacy and any amendment at issue. (*Garat v. City of Riverside, supra,* 2 Cal.App.4th 259, 292-293.)

*See footnote, *ante*, page 1846.