[No. B121554. Second Dist., Div. Three. Jan. 29, 1999.]

EARL JOSEPH HONSICKLE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
IWONA WYSOCKI et al., Real Parties in Interest.

## COUNSEL

Horvitz & Levy, Barry R. Levy, Lisa Perrochet, Jon B. Eisenberg; Bollington, Stilz, Bloeser & Curry and Kent G. Mariconda for Petitioners.

No appearance for Respondent.

Fizzolio & McLeod and Stephen R. McLeod for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—This is the latest in a series of cases which involve the scope and application of Proposition 213, enacted by the voters on November 5, 1996.[1] Essentially, this initiative prohibits (1) recovery of *any* damages by a convicted felon for injuries caused in the commission of or flight from the felony (Civ. Code, § 3333.3)[2] and (2) recovery of noneconomic

---

[1] In addition to the cases discussed in this opinion, see also *Goodson* v. *Perfect Fit Enterprises, Inc.* (1998) 67 Cal.App.4th 508 [79 Cal.Rptr.2d 102], review denied January 27, 1999; *Hondo Co.* v. *Superior Court* (S0747468) review granted January 13, 1999; *Horwich* v. *Superior Court* (S073129) review granted September 30, 1998.

damages by any drunk driver, uninsured driver or uninsured owner arising out of the operation or use of a motor vehicle. (Civ. Code, § 3333.4.)[3] The issue presented here poses the question of whether Civil Code section 3333.4,[4] subdivision (a), can be applied retroactively to preclude a recovery of noneconomic damages by an uninsured driver who (1) had attempted but failed to purchase the required liability insurance, (2) was injured due to the negligence of another, and (3) filed an action to recover damages therefore, all *prior* to the passage of Proposition 213.

The petitioners, Earl Joseph Honsickle and Ethel Honsickle (hereafter petitioners) are the defendants whose negligence allegedly caused bodily injury to the plaintiffs Iwona Wysocki (Iwona) and Tomasz Wysocki (Tomasz) (collectively the Wysockis).[5] When petitioners asserted the defense of Civil Code section 3333.4, the Wysockis moved for a summary adjudication as to its application on the ground that Iwona had tried and failed to obtain insurance prior to the accident and therefore the subsequently enacted Proposition 213 could not be retroactively applied to preclude recovery of noneconomic damages by either Iwona or Tomasz. The trial court agreed with the Wysockis and granted their motion.

---

[2]Civil Code section 3333.3 provides: "In any action for damages based on negligence, a person may not recover any damages if the plaintiff's injuries were in any way proximately caused by the plaintiff's commission of any felony, or immediate flight therefrom, and the plaintiff has been duly convicted of that felony."

[3]Civil Code section 3333.4 provides:

"(a) Except as provided in subdivision (c), in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] (1) The injured person was at the time of the accident operating the vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense. [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state. [¶] (3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state.

"(b) Except as provided in subdivision (c), an insurer shall not be liable, directly or indirectly, under a policy of liability or uninsured motorist insurance to indemnify for non-economic losses of a person injured as described in subdivision (a).

"(c) In the event a person described in paragraph (2) of subdivision (a) was injured by a motorist who at the time of the accident was operating his or her vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense, the injured person shall not be barred from recovering non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages."

[4]For the sake of accuracy, we note that prior to January 1, 1999, there were two Civil Code sections with the same number codified as section 3333.4. The first section so numbered was about pipelines and oil spills (see now Civ. Code, § 3333.5) and was unrelated to Proposition 213.

[5]Our use of plaintiffs' first names is in the interest of clarity and simplicity. We intend no disrespect or offense by such familiarity.

As we conclude that the trial court has improperly read into Proposition 213 an exception which is not there, we grant the petitioners' request for issuance of a writ of mandate.

### FACTUAL AND PROCEDURAL BACKGROUND[6]

On March 20, 1995, Iwona, while driving the vehicle owned by her husband, Tomasz, was involved in an automobile accident with the petitioner Earl Honsickle.[7] Iwona is an immigrant from Poland who entered the United States in November of 1993 on a tourist visa. She married Tomasz in February of 1994 and they have one child who was born in the United States. Tomasz is employed in the United States by Lufthansa Air Lines and is a permanent resident alien. However, Iwona has no such status. Although she petitioned for a permanent resident status in 1994, such petitions take four or five years to be approved. Thus, at all times relevant hereto, Iwona's status was and is that of an immigrant with an expired tourist visa awaiting approval of permanent resident status.

This circumstance is relevant to this case because, without such status, Iwona was unable to obtain a driver's license from the California Department of Motor Vehicles. (Veh. Code, § 12801.5, subd. (a).) Without such license, she could not legally operate a motor vehicle in California and could not obtain liability insurance coverage.

On February 11, 1995, Tomasz applied for liability insurance coverage on his vehicle as well as coverage for himself, Iwona and his father as drivers. The requested policy was issued, but because Iwona did not have a valid operator's license, *coverage as to her was denied.* Indeed, a "Designated Person Endorsement" was added to the policy which expressly stated that *no coverage* at all would be provided under the policy *while the vehicle was being operated by Iwona.* Thus, Iwona would at all times be an uninsured driver and, when she was operating it, the vehicle itself would be uninsured. It is undisputed that such denial of coverage as to Iwona and her operation of the vehicle was due solely to the fact that she did not possess a valid California driver's license and, because of her immigration status, could not obtain one; nor is there any dispute that Iwona and Tomasz were at all times

---

[6]The facts which we recite are not in dispute. The construction and interpretation of the legislative initiative involved here are a pure question of law. (*Flavell* v. *City of Albany* (1993) 19 Cal.App.4th 1846, 1850-1851 [25 Cal.Rptr.2d 21].)

[7]The record suggests that this accident resulted entirely from the negligence of Earl Honsickle, who allegedly failed to stop for a red light at a controlled intersection and struck the vehicle driven by Iwona which had lawfully entered the intersection. We note these alleged circumstances for context and background only, and recognize that they are subject to proof at trial.

aware that (1) Iwona could not legally operate a motor vehicle in California and, when she did, (2) there was no insurance coverage for her or the vehicle.

On March 12, 1996, Iwona and Tomasz filed this action against petitioners seeking special and general (noneconomic) damages for her injuries as well as damages (noneconomic) for his claimed loss of consortium. After it appeared that petitioners would raise Civil Code section 3333.4, subdivision (a), as a defense to Iwona's claim for general damages as well as to Tomasz's loss of consortium claim, Iwona and Tomasz moved on January 16, 1998, for summary adjudication that Civil Code section 3333.4 may not be applied (1) retroactively to either Iwona or Tomasz, (2) retroactively as to Iwona who could not obtain insurance, in spite of her best efforts, due to her illegal immigration status, or (3) to Tomasz in any event, as he *was* insured at the time of the accident.

The trial court, based on the undisputed facts recited above, granted the motion on the ground that Iwona had *attempted* to obtain insurance prior to the accident. This fact, the court held, precluded the retroactive application of Civil Code section 3333.4. For this conclusion, the trial court relied *entirely* on a one sentence statement set out in a recent decision of Division Seven of this district in *Yoshioka* v. *Superior Court* (1997) 58 Cal.App.4th 972 [68 Cal.Rptr.2d 553] (*Yoshioka*). That case had held that Civil Code section 3333.4 could be constitutionally applied, both retroactively as well as prospectively, but, in a part of its discussion, said: "Further, if the uninsureds made any attempt at all (good faith or otherwise) to buy insurance, they would in fact no longer be subject to such a penalty." (58 Cal.App.4th at p. 990.) The trial court, according to the transcript of the oral proceedings on the motion, apparently believed the *Yoshioka* court had effectively created an "attempt to purchase insurance" exception to Civil Code section 3333.4, which exception was necessary in order to retroactively apply the statute in a constitutional manner.

On April 28, 1998, petitioners filed a petition for a writ of mandate which sought to set aside the trial court's order. We issued an alternative writ and set the matter for hearing.

CONTENTIONS

Petitioners argue that the trial court's reliance upon a single statement by the *Yoshioka* court amounted to nothing more than an "off-the-cuff" dictum for which no authority, reasoning, justification or analysis was presented. They urge that Proposition 213 has been found to be constitutional, whether

applied retroactively or prospectively, is clear on its face, and should be enforced as written.

Iwona and Tomasz respond that the lack of insurance coverage was not the result of neglect or refusal to comply with the law, but was the product of complicated circumstances related to immigration rules and procedures and not their fault. Given these circumstances, the public policies which Proposition 213 sought to vindicate are simply not implicated in this case and there is no reason to bar Iwona and Tomasz from a full recovery for those damages to which they otherwise would be entitled. Finally, and most significantly, they contend that Proposition 213 simply cannot be applied retroactively to punish them for failing to obtain insurance coverage which they, in good faith, had attempted to purchase.

DISCUSSION

1. *Proposition 213 Is Constitutional*

 a. *Prospective Application*

 It would appear to be a settled proposition that Proposition 213's prospective application is constitutional. (*Quackenbush* v. *Superior Court* (1997) 60 Cal.App.4th 454, 463-464 [70 Cal.Rptr.2d 271] (*Quackenbush*); *Yoshioka, supra,* 58 Cal.App.4th at pp. 989-992.) In *Yoshioka,* the argument was made that Proposition 213 could not be applied prospectively because it denied procedural due process and violated the equal protection clause. Both of these arguments were persuasively rejected by the court and that discussion needs only brief comment here.

 With respect to due process, it is sufficient to note that, unlike those cases in which due process did require a hearing (see, e.g., *Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696] [which struck down a Vehicle Code provision which required automatic license suspension if uninsured driver involved in accident without first providing a hearing to determine driver's potential culpability] and *Bearden* v. *Georgia* (1983) 461 U.S. 660 [103 S.Ct. 2064, 76 L.Ed.2d 221] [which held that a sentencing court could not revoke a defendant's probation for failure to pay a fine without some evidence that defendant was responsible for the failure]), Proposition 213 presents no such concern. As the *Yoshioka* court put it, ". . . uninsured motorists that choose to drive can easily avoid the penalty of not being entitled to noneconomic damages, by simply choosing [instead] alternative forms of transportation. *Further, if the uninsured made any attempt at all (good faith or otherwise) to buy insurance, they would in fact no longer be*

*subject to such a penalty.* Therefore, we see no reason to entitle each insured driver to a hearing. We find no due process violation." (58 Cal.App.4th at p. 990, italics added.)

The italicized language cited in the previous paragraph is what the trial court relied upon in granting Iwona and Tomasz's motion for summary adjudication. While the trial court conceded that such language was probably dicta, it speculated (and then seemed to conclude) that this was probably a way to justify the constitutionality of the statute's retroactive application.[8] We think such an application of *Yoshioka* is the product of an unfortunate and out of context reading of the court's language. First of all, this discussion occurs in the portion of the *Yoshioka* opinion which deals with *prospective*, not retrospective, application of Proposition 213; thus, it could have nothing to do with the *Yoshioka* court's rationalization for its conclusion regarding the constitutionality of its retroactive application. Second, this isolated sentence is really part of the court's explanation as to why the *Rios* and *Bearden* cases have no application. Unlike the circumstances presented by those cases, there are no issues of *culpability* or *fault* involved in or raised by Proposition 213.

For purposes of *prospective* constitutionality, the *Yoshioka* court is saying, a motorist who wants to preserve a right to recover noneconomic damages can either purchase insurance or find some other means of travel. In other words, it is a matter *entirely* within his or her control. Such a *prospective* legislative regulation of behavior by imposition of consequences for noncompliance is clearly constitutional. Finally, when examined in that context, it is clear that all the *Yoshioka* court was really saying was that if a motorist "attempts" to buy insurance he or she (obviously) will obtain it. There is no need for a hearing to decide whether or not such purchase efforts were pursued in good faith. They will either be successful or they will not. If the former, then the motorist will suffer no penalty. If the latter, noneconomic damages will be precluded. There is no offense to due process.

With respect to equal protection, the *Yoshioka* court was equally succinct. ■ A classification involving economic rights invokes the rational basis test. (*Yoshioka, supra,* 58 Cal.App.4th at p. 990.) The test is met if (1) the statute has a legitimate purpose and (2) the Legislature reasonably believed the classification would promote that purpose. ■ (*Ibid.*) "[I]nterests in

---

[8]The *Quackenbush* court took note of this peculiar statement in *Yoshioka* in a footnote: "We make no comment on whether an inadvertently and unexpectedly uninsured plaintiff may avoid the restrictions of Proposition 213, other than to express extreme skepticism about *Yoshioka*'s suggestion that a mere attempt to buy insurance, 'good faith or otherwise' . . . (whatever that means), would prevent the penalty." (*Quackenbush, supra,* 60 Cal.App.4th at p. 468, fn. 8.)

(1) restoring balance to our justice system and (2) reducing costs of [mandatory automobile] insurance" are legitimate. (*Ibid.*) The *Yoshioka* court concluded that the uninsured motorist classification is rationally related to those two legitimate interests. (*Id.* at pp. 990-992; see also *Quackenbush, supra,* 60 Cal.App.4th at pp. 463-464.) "Only the 'rational basis' test must be met when reviewing legislative classifications among personal injury plaintiffs. [Citation.] When one class is treated differently from another, there must be ' "some rationality in the nature of the class singled out" ' [citations] and a 'rational relationship between the legislative goal and the class singled out for unfavorable treatment.' [Citation.]" (*Quackenbush, supra,* 60 Cal.App.4th at p. 466.)

That is not to say that Proposition 213 does not create some strange anomalies in its disparate treatment of different classes of motorists. As the *Quackenbush* court noted: "Why, for example, should an uninsured owner be permitted to recover noneconomic damages from a drunk driver while an uninsured driver who is not an owner may not? And why must a drunk driver have been convicted in order for the uninsured driver to recover? Doesn't this disfavor an uninsured owner in the situation where an obviously drunk driver dies from injuries sustained in the crash? Should felons committing or fleeing crimes and drunk drivers be excused from any Proposition 213 penalties if they avoid convictions, while uninsured motorists have no comparable leeway? Should tortfeasors (insured or not) who injure uninsured motorists, even recklessly or intentionally, be immune from noneconomic damages while tortfeasors who injure felons are immune only from damages caused by negligence? Should an uninsured owner be denied noneconomic damages when injured by a felon committing any crime other than drunk driving, no matter how serious the felony?" (60 Cal.App.4th at p. 465.)

However, *Quackenbush* considered these to be problems of *secondary*, not primary, classification. Thus, it is not necessary to demonstrate that each of these statutory anomalies are rationally related to the *primary purposes*, which were directed at making a distinction between people who obey the law, buy automobile insurance, drive only while sober and commit no vehicle-related felonies, and those who are disfavored because they do not. "The secondary classification scheme addressed secondary objectives, balancing rights among members of the disfavored groups and facilitating determining which persons would be included in the disfavored groups. It reasonably accomplished these objectives and did not interfere with accomplishment of the primary objectives of the legislation. It was required to do no more." (60 Cal.App.4th at pp. 466-467.)

b. *Retroactive Application*

■ Proposition 213 did not expressly state that it would be applied retroactively. It provided: "This act shall be effective immediately upon its adoption by the voters. Its provisions shall *apply to all actions in which the initial trial has not commenced prior to January 1, 1997*." (Italics added.) As Iwona's accident occurred and she filed her action for damages prior to such effective date, any application of Proposition 213 would necessarily be retroactive. ■ This is what is called secondary retroactivity, which is defined as "[retroactivity which] affect[s] the *future* legal consequences of past transactions.' " (*20th Century Ins. Co.* v. *Garamendi* (1994) 8 Cal.4th 216, 281 [32 Cal.Rptr.2d 807, 878 P.2d 566].) This type of retroactivity "does not itself offend any law, including the United States and California Constitutions and their respective due process clauses." (*Id.* at p. 282.)

■ These were the exact circumstances presented to the court in *Yoshioka.* That court examined Proposition 213 and the voter pamphlet materials, and concluded that the electorate intended to adopt the initiative retroactively. (*Yoshioka, supra,* 58 Cal.App.4th at pp. 979-981.) Then, in a detailed analysis, the *Yoshioka* court determined that such retroactive application met the constitutional requirements of both due process and the equal protection clause. (*Id.* at pp. 981-988.) We have considered the *Yoshioka* opinion carefully and believe that it reached a correct and proper result. There is no need to repeat its extended discussion here. We adopt the reasoning of the *Yoshioka* court and conclude that Proposition 213 may be constitutionally applied to the claims raised by Iwona and Tomasz.

2. *There Is No Exception to Proposition 213 for a Driver or Owner Who Unsuccessfully "Attempts" to Purchase Insurance*

■ It probably does not overstate it to say that the claims of Iwona and Tomasz rest entirely on the one isolated sentence in the *Yoshioka* opinion which we have already discussed. That sentence, they argue, created an "exception" to the application of Proposition 213. The *only* basis for such a claimed exception is the isolated and unsupported statement in *Yoshioka.* However, as we have explained, that sentence was not supported by any reasoning, analysis or authority; and, more importantly, we do not believe the *Yoshioka* court ever meant to convey the meaning which the Wysockis now seek to attribute to it. Finally, even if that was the court's purpose, we still could not endorse it.

Every person eligible and licensed to drive in California may obtain liability insurance. For example, Insurance Code section 11620 et seq.

(which establishes California's "assigned risk plan" program), sets forth a means by which all applicants who are, in good faith, entitled to but unable to procure insurance through ordinary methods may obtain automobile liability insurance. The statutory scheme permits all persons eligible to drive in California, including those with poor driving records, to obtain insurance. A person eligible for insurance coverage by holding a valid driver's license is, by law, placed in the high-risk insurance pool. When Proposition 213 is considered with the assigned risk plan any exception to the requirement to maintain liability insurance in order to recover noneconomic losses arising from an accident would require highly unusual circumstances showing that the motorist, who in all other respects was in compliance with the law, had suddenly and unexpectedly lost his or her insurance coverage without an opportunity to reinstate the coverage.

Even if such a "good faith" exception to Proposition 213 existed (which we neither suggest nor endorse), Iwona was not inadvertently or unexpectedly uninsured. She was at all times aware she did not have a driver's license and was therefore not *eligible* to drive in California. No extensive discussion of the retroactive and prospective application of Proposition 213 is really necessary under the circumstances here. Iwona knew she was breaking the law each time she drove before the passage of Proposition 213; she continued the same illegal conduct after the passage of Proposition 213.

An application for insurance coverage for an unlicensed driver is an absurdity on its face. As a matter or law, such an invalid application for insurance could not, in any event, be a "good faith" exception to Proposition 213. Iwona knew she was violating the law every time she drove without a valid driver's license. The whole purpose of Proposition 213 would be undercut, if not entirely negated, by creating an exemption for an unlicensed person. Iwona, who deliberately and knowingly violated traffic-related laws both before and after the passage of Proposition 213, is exactly the type of person the electorate intended to bar from recovering noneconomic damages.

### 3. *Tomasz's Loss of Consortium Claim Also Fails*

We also reject Tomasz's claim for loss of consortium. Beyond question, that claim consists entirely of noneconomic damages. (See *Meighan* v. *Shore* (1995) 34 Cal.App.4th 1025, 1034 [40 Cal.Rptr.2d 744].) While his cause of action for loss of consortium is not derivative of Iwona's claim against petitioners for personal injuries (*Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380, 1394-1396 [273 Cal.Rptr. 231]; *Lantis* v. *Condon* (1979) 95 Cal.App.3d 152, 157 [157 Cal.Rptr. 22]), it *arises out of* the bodily injury which she suffered and on which her claim is based. (*United Services Automobile Assn.* v.

*Warner* (1976) 64 Cal.App.3d 957, 963-964 [135 Cal.Rptr. 34].) Civil Code section 3333.4 mandates that "in *any* action to recover damages *arising out of* the operation or use of a motor vehicle, *a person* shall not recover non-economic . . . damages if . . . [¶] . . . [¶] (2) [t]he injured person was the *owner* of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state." (Civ. Code, § 3333.4, subd. (a)(2), italics added.) Applied to this case, Tomasz is the "injured" person, given his claim for loss of consortium damages, and he is also the *owner* of the vehicle which was *uninsured* at the time of the accident.[9] Under subdivision (a)(2) of section 3333.4, he is barred from recovering any noneconomic damages. His claim literally falls within the statute's express terms.

If he had been a passenger in the car at the time of the accident and had himself been injured, he would have been barred from recovering any nonpecuniary damages associated with such injury. We see no reason why a different result should be reached merely because his "injury" is based on a loss of consortium resulting from his wife's injury rather than bodily injury to himself. His claim does not gain any vitality merely because he was not in the car at the time of the accident. He is still an "injured" "owner" seeking to recover noneconomic damages "arising out of the operation or use of a motor vehicle . . . [which] was not insured. . . ." The statute placed an economic disincentive burden upon him, *as the owner of the vehicle*, to make sure that it was not driven except in compliance with the mandate of the financial responsibility laws. This he failed to do. We will not give a tortured construction of the statute in order to reward him for such failure.[10]

That he would have been entitled to recover if *he* had been driving cannot justify a recovery under these circumstances where there was no insurance coverage at all. Because (1) the accident causing the injuries to his wife, upon which he bases his claim, occurred while she (an uninsured driver) was operating the family vehicle, and (2) Tomasz's liability policy expressly excluded *all* coverage for the vehicle under such circumstances, the "vehicle was not insured as required by the financial responsibility laws of this state." (Civ. Code, § 3333.4, subd. (a)(2).) Proposition 213 precludes his recovery.

CONCLUSION

For all of the foregoing reasons, the trial court erred in granting the motion of Iwona and Tomasz for summary adjudication of the issue raised

---

[9]There is no claim in this matter that petitioners were operating their vehicle in violation of Vehicle Code section 23152 or 23153 so as to make the exception set out in subdivision (c) of section 3333.4 applicable.

[10]We also note that if Tomasz were allowed to recover on his claim, one-half of that recovery would belong to Iwona as her community property. (*Meighan* v. *Shore, supra,* 34 Cal.App.4th at p. 1034.)

by petitioners' Proposition 213 defense. The motion should have been denied. Proposition 213 will, under the facts reflected by the record before us, preclude any recovery of noneconomic damages by either Iwona or Tomasz.

## DISPOSITION

The alternative writ, having served its purpose, is discharged. Let a peremptory writ of mandate issue directing the trial court to (1) vacate its order of March 19, 1998, granting the motion for summary adjudication, (2) enter a new and different order denying the same, and (3) conduct further proceedings in this matter in a manner not inconsistent with the views expressed herein. Petitioners shall recover their costs incurred in this writ proceeding.

Klein, P. J., and Aldrich, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied May 19, 1999.