[No. B121351. Second Dist., Div. Four. Aug. 23, 1999.]

JOSEPH CHRISTIAN JENKINS, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## Counsel

Scolinos, Sheldon & Nevell, Todd F. Nevell and Harry Frank Scolinos for Plaintiff and Appellant.

Nelson & Fulton, Henry Patrick Nelson, Amber A. Logan; Greines, Martin, Stein & Richland, Timothy T. Coates and Alan Diamond for Defendants and Respondents.

## Opinion

**EPSTEIN, J.**—This is an appeal from a judgment that followed summary judgment for defendants. Plaintiff and appellant, Joseph Christian Jenkins, sued the County of Los Angeles and certain deputy sheriffs, claiming that he was injured as a result of an unlawful use of force. Summary judgment was granted on the ground that Civil Code[1] section 3333.3 bars the suit. Section 3333.3, adopted by initiative in 1996, provides: "In any action for damages based on negligence, a person may not recover any damages if the plaintiff's injuries were in any way proximately caused by the plaintiff's commission of any felony, or immediate flight therefrom, and the plaintiff has been duly convicted of that felony."

We conclude that the trial court erred in granting summary judgment for two reasons: (1) section 3333.3 does not apply to causes of action for intentional torts; and (2) appellant raised a triable issue of material fact as to whether his injuries were sustained during immediate flight from the commission of a felony.

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

For the guidance of the trial court on remand, we also discuss appellant's argument that the statute is not retroactive, and that, if it is, that application would violate his due process rights. We conclude that the statute is retroactive and that giving it such application does not effect a due process violation.[2]

## FACTUAL AND PROCEDURAL SUMMARY

Appellant admits that he stole a Datsun 240Z vehicle at midnight on August 29, 1995. At 4 a.m. the same night, a security guard saw appellant enter a car parked in front of an apartment complex, clutching papers to his chest. Appellant then returned to the Datsun and drove away. The security guard telephoned police to report a possible car burglary.

Appellant drove to a nearby strip mall and parked in the lot. He got out of the car, used a pay telephone to call his girlfriend, then returned to the Datsun to wait for his girlfriend to call him back. Los Angeles County Sheriff's Deputies Harpham and Sachs received a transmission reporting the possible car burglary. They went to the scene and the security guard pointed out the direction in which appellant had driven. The deputies drove into a nearby strip mall and found appellant seated inside the Datsun.

Appellant put his car in reverse and commenced driving out of the parking lot when he saw the deputies. Deputy Harpham thought that Deputy Sachs was in danger of being run over by appellant's car. Deputy Harpham fired four shots at appellant. Appellant was rendered a paraplegic from the resulting wounds.

Appellant was charged with felonious assault with a deadly weapon (Pen. Code, § 245), driving or taking a vehicle without the owner's consent (Veh. Code, § 10851), and burglary (Pen. Code, § 459). He pled guilty to a violation of Vehicle Code section 10851 and was sentenced to a term of two years in state prison.

Appellant sued the County of Los Angeles, the Los Angeles County Sheriff's Department, Deputy Elizabeth Sachs, and Deputy Rick Harpham (collectively respondents) for assault, battery, intentional infliction of emotional distress, negligence and violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.). Respondents moved for summary judgment on the alternative grounds that the action was barred by section 3333.3 and that, as

---

[2]Respondents ask us to affirm the summary judgment on the alternative ground that their conduct was reasonable under the circumstances. The trial court did not reach this ground and we decline to do so in the first instance.

a matter of law, the defendants' use of deadly force was reasonable under the circumstances. Appellant opposed the motion.

The trial court concluded that section 3333.3 barred the action: "This lawsuit is precluded by Proposition 213 as codified in Civil Code 3333.3. That law applies to all actions in which the initial trial has not commenced prior to January 1, 1997 and is, therefore, applicable. [¶] Plaintiff stole a car, refused to stop for a patrol car and officers. At the time of the incident, plaintiff was intending to flee the location to avoid arrest. This constitutes 'immediate flight' following the commission of a felony. Plaintiff was subsequently convicted of that felony. [¶] Althought [sic] the statute refers to 'any action for damages based on negligence', the findings and declaration of purpose of Proposition 213 state that the law is intended to preclude criminals from recovery [sic] damages for injuries suffered during the commission of their crimes. The voters have thus said that, if you are committing a felony, you can't sue for damages. To allow suits under alternative tort theories such as assault, battery, emotional distress or violation of the Unruh Act would render the Initiative Measure meaningless and violate the intent of Proposition 213, paragraph 3. Since, under the law, no damages can be recovered, plaintiff's suit must fail and summary judgment is granted."

Appellant filed a timely appeal from the ensuing judgment.

DISCUSSION

■ " 'Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding. . . .' (§ 437c, subd. (a).) 'The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is ·entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence . . . and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted . . . on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' [Citations.] [¶] A defendant meets his or her burden on a motion for summary judgment if that party has proved there is a complete defense to the cause of action. (§ 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. [Citations.] [¶] On appeal, we independently assess the correctness of the trial court's ruling, applying the same legal

standard as the trial court. [Citations.] ' "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." . . . .' " (*Van Dyke* v. *Dunker & Aced* (1996) 46 Cal.App.4th 446, 450-451 [53 Cal.Rptr.2d 862].)

I

Appellant argues the trial court erred in applying section 3333.3 to bar his causes of action for intentional torts and for violation of the Unruh Civil Rights Act because the statute applies only to causes of action based on negligence. Respondents argue that the section bars the intentional tort claims as well because, "By their nature, claims against law enforcement officers alleging excessive force *are* claims 'based on negligence' because the threshold issue in each case is whether a defendant's use of force was reasonable as to immunize him from suit." (Respondents' italics.) Respondents' argument is inconsistent with the both plain language of the statute and the apparent intent of the electorate in adopting it.

"Where, as here, legislative intent is expressed in unambigous terms, we must treat the statutory language as conclusive; 'no resort to extrinsic aids is necessary or proper.' [Citations.]" (*Briggs.* v. *Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119-1120 [81 Cal.Rptr.2d 471, 969 P.2d 564].) But, we may consider legislative history where it buttresses our interpretation of the plain meaning of a statute. (*Id.* at pp. 1120-1121.) We conclude that the language "In any action for damages based on negligence . . ." in section 3333.3 is unambiguous and clearly is intended to limit the immunity to causes of action sounding in negligence, rather than to extend it to intentional torts. This conclusion is buttressed by the legislative history of the initiative.

Sections 3333.3 and 3333.4 comprise "The Personal Responsibility Act of 1996," approved by the voters at the November 5, 1996, General Election as Proposition 213. The initiative prohibits (1) "recovery of *any* damages by a convicted felon for injuries caused in the commission of or flight from the felony (Civ. Code, § 3333.3) and (2) recovery of noneconomic damages by any drunk driver, uninsured driver or uninsured owner arising out of the operation or use of a motor vehicle. (Civ. Code, § 3333.4.)" (*Honsickle* v. *Superior Court* (1999) 69 Cal.App.4th 756, 758-759 [82 Cal.Rptr.2d 36], fn. omitted.)

Our task in reviewing an initiative enacted by the voters is limited: "[I]t is not our role to second-guess the electorate's decision that the benefits

to the state outweigh hardships to individual plaintiffs adversely affected by the measure." (*Quackenbush* v. *Superior Court* (1997) 60 Cal.App.4th 454, 462 [70 Cal.Rptr.2d 271].) To interpret the meaning of an initiative, we must determine the intent of the electorate based on the language of the initiative itself. (*Yoshioka* v. *Superior Court* (1997) 58 Cal.App.4th 972, 980 [68 Cal.Rptr.2d 553].) We may consider the voter pamphlet in determining the intent of the electorate. (*Id.* at p. 981.)

 The text of Proposition 213 included a statement of findings and a declaration of purpose: "(a) Insurance costs have skyrocketed for those Californians who have taken responsibility for their actions. Uninsured motorists, drunk drivers, and criminal felons are law breakers, and should not be rewarded for their irresponsibility and law breaking. However, under current laws, uninsured motorists and drunk drivers are able to recover unreasonable damages from law abiding citizens as a result of drunk driving and other accidents, and criminals have been able to recover damages from law-abiding citizens for injuries suffered during the commission of their crimes. [¶] (b) Californians must change the system that rewards individuals who fail to take essential personal responsibility to prevent them from seeking unreasonable damages or from suing law-abiding citizens. [¶] (c) Therefore, the People of the State of California do hereby enact this measure to restore balance to our justice system by limiting the right to sue of criminals, drunk drivers, and uninsured motorists." (Ballot Pamp., Prop. 213, text of proposed law, Gen. Elec. (Nov. 5, 1996) p. 102 (hereafter Ballot Pamphlet).)

The Ballot Pamphlet prepared for the voters included a summary prepared by the Attorney General. That summary stated that Proposition 213, "Denies all recovery of damages to a convicted felon whose injuries were proximately caused during the commission of the felony or immediate flight therefrom." (Ballot Pamp., *supra*, at p. 48.) This summary does not reflect the actual language of section 3333.3, which bars a felon from pursuing damages "In any action for damages based on negligence . . . ." The Ballot Pamphlet also contains an analysis of Proposition 213 prepared by the Legislative Analyst. The relevant portion of that analysis states: "Currently, in certain cases a person who is injured while breaking the law may sue on the basis of another person's negligence to recover any losses resulting from the injury. For example, a person convicted of a robbery who was injured because he or she slipped and fell while fleeing the scene of the crime can sue to recover losses resulting from the injury. [¶] This measure prohibits a person convicted of a felony from suing to recover any losses suffered while committing the crime or fleeing from the crime scene *if* these losses resulted from another person's negligence. Convicted felons, however, would still be

able to sue to recover losses from some injuries suffered while committing or fleeing a crime—for instance those resulting from the use of 'excessive force' during an arrest." (Ballot Pamp., *supra*, at p. 49, italics in original.)

The Ballot Pamphlet argument in favor of Proposition 213 emphasized that the measure was intended to bar tort recovery of damages by felons only in actions based on negligence: "Proposition 213 takes the 'profit' out of crime by closing a legal loophole that allows convicted felons to sue law-abiding citizens, businesses and governments to pay for *'accidental injuries'* incurred while running from their crime." (Ballot Pamp., *supra*, at p. 50, orginal italics omitted, italics added.) The rebuttal to the argument against Proposition 213 is similar: "California law allows felons convicted of resisting a peace officer and causing serious injury or death to the peace officer to sue a city, county or anyone else who gets in their way and *accidentally* injures the felon fleeing from that crime. . . ." (Ballot Pamp., *supra*, at p. 51, original italics omitted, italics added.)

It is clear from the language of section 3333.3 and the Ballot Pamphlet argument that the intent was to prevent felons from recovering for damages that were negligently inflicted during commission of the crime or during immediate flight from the crime. There is nothing in either the statute or the Ballot Pamphlet arguments to indicate that this prohibition applies to causes of action for intentional acts, such as appellant's causes of action for assault, battery, intentional infliction of emotional distress, and violation of the Unruh Civil Rights Act.

The language of both section 3333.3 and the Ballot Pamphlet arguments distinguish our case from *Calvillo-Silva* v. *Home Grocery* (1998) 19 Cal.4th 714 [80 Cal.Rptr.2d 506, 968 P.2d 65], in which the Supreme Court considered a statutory scheme to limit the right of felons to recover tort damages. The statute in question in *Home Grocery* was section 847, enacted in 1985. (Stats. 1985, ch. 1541, § 1, p. 5656.) It provides immunity to an owner of any interest in real property, including a public entity, from liability for injury or death occurring upon their property "during the course of or after the commission" of any of 24 enumerated felonies. A provision of section 847, similar to section 3333.3, requires the property owner invoking the immunity to establish that the plaintiff had been charged with commission of an enumerated felony, and that he or she subsequently had been convicted of that felony or a lesser included felony or misdemeanor arising from the charged felony. (§ 847, subd. (e).)

The drafters of section 847 defined the limits of the immunity as follows: "(f) This section does not limit the liability of an owner or an owner's agent

which otherwise exists for willful, wanton, or criminal conduct, or for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." This approach contrasts with the provisions the drafters included in section 3333.3, which limit the immunity provided to "any action for damages based on negligence . . . ." Despite this difference in the language of the two statutes, we find the Supreme Court's interpretation of section 847 in *Home Grocery* to be instructive, as we shall explain.

The Supreme Court began its analysis with section 1714, which states the general policy regarding tort liability: "For well over a hundred years, section 1714 has provided in relevant part: 'Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.' [Citation.]" (*Calvillo-Silva* v. *Home Grocery, supra,* 19 Cal.4th at p. 721.) The court then examined the legislative history of section 847, which demonstrated an intention " 'to address the increasing number of attempts by criminals injured in the course of their crimes to demand compensation from their intended victims' and to provide a means to 'facilitate the early dismissal of lawsuits of this type.' [Citations.]" (19 Cal.4th at p. 722.)

The *Home Grocery* court then addressed the question of whether the immunity provided in section 847 limits liability only for negligence, or whether it extends to the intentional use of deadly force. (19 Cal.4th at p. 727.) It observed: "When the amount of force used is justifiable under the circumstances, it is not willful and the actor may escape liability for intentionally injurious conduct that is otherwise actionable. [Citation.] But if force is applied in excess of that which is justified, the actor remains subject to liability for the damages resulting from the excessive use of force." (*Id.* at pp. 730-731.)

The Supreme Court concluded: "[W]hen the statutory predicates have been met, immunity is available not only for negligence, . . . but also for the intentional use of deadly or injurious force when such force is justifiable." (*Calvillo-Silva* v. *Home Grocery, supra,* 19 Cal.4th at p. 735.) Based on the record before it, the court concluded that the plaintiff had raised a triable issue of material fact as to whether the force used against him was justified. "On this record, we cannot say, *as a matter of law,* that the force used by defendants ' "reasonably appear[ed] necessary, in view of all the circumstances of the case, to prevent [an] impending injury." ' [Citation.]" (*Id.* at p. 737, italics in original.) It concluded that summary judgment in favor of the defendant was improper. (*Ibid.*)

The Supreme Court based its holding that section 847 extends to justifiable use of intentional force, in part, on the absence of any indication the Legislature intended to limit the immunity to negligent acts of property owners. "[I]f the Legislature had actually wanted to categorically exclude all 'intentional' or 'purposeful' conduct from the scope of the statutory immunity, it could easily have used such phraseology instead of declaring that the statute 'does not limit the liability . . . which otherwise exists' for conduct that has long been understood to imply wrongfulness as well as intentionality. [Citations.]" (*Calvillo-Silva* v. *Home Grocery, supra*, 19 Cal.4th at p. 732.)

As we have discussed, the drafters of section 3333.3 incorporated such a limitation by making the immunity applicable only to actions based on negligence.

The *Home Grocery* court also examined the legislative history of section 847: "True, the analysis shows legislative contemplation that the proposed immunity would effectively resurrect the contributory negligence doctrine in those cases where negligence forms the basis of liability. *But there is nothing in the analysis to support the additional inference that the proposed immunity is intended to apply exclusively to claims of negligence.* Instead, consistent with the statutory language, the various legislative committees repeatedly described the types of actions covered by the proposed immunity simply as actions for 'any injury' or 'injuries' or as actions on behalf of 'injured persons' for 'injury or death.' *Conspicuously absent from the legislative history is any mention of the notion that the only actions affected by the proposed immunity are those based upon negligence. Accordingly, we find no basis for implying such a restriction.*" (19 Cal.4th at pp. 732-733, original italics and italics added.)

By contrast, the Ballot Pamphlet argument in favor of Proposition 213 demonstrates an intention to limit the immunity to "accidental" injuries, and to preserve the right of a felon to seek damages for injuries which are the result of nonnegligent use of excessive force.

Based on the express language of the initiative statute, which is consistent with the Ballot Pamphlet arguments urging its adoption, we conclude the trial court erred in holding that section 3333.3 bars appellant from recovering damages on his causes of action based on intentional conduct.

## II

Appellant argues the trial court erred in granting summary judgment to respondents on his negligence cause of action because there are triable

issues of material fact as to whether he was in immediate flight from the felony at the time he was injured. Respondents argue that section 3333.3 bars appellant's cause of action for negligence for three reasons: (1) it applies even though the deputies were not investigating the theft of the Datsun and he was not pursued after that theft; (2) even if the temporary safety doctrine applies, appellant's crime was on-going at the time he was injured; and (3) all of appellant's injuries were proximately caused by his flight from the deputies. We agree with appellant.

According to appellant's deposition testimony, he took the Datsun 240Z at midnight. The confrontation in the parking lot took place some four hours later. When the deputies found appellant, he was sitting in the stolen Datsun, which was parked in a lot. The deputies were looking for a suspect in a car burglary, a crime for which appellant was not convicted. The deputies were not reacting to a report that the Datsun had been stolen. The record does not establish, as a matter of law, that appellant's injury occurred in the commission or immediate flight from the crime for which he was convicted. The language of the Ballot Pamphlet makes it clear that section 3333.3 was intended to apply only in circumstances in which the plaintiff felon was injured during the commission of the crime or during the immediate flight therefrom: "*Further, if Proposition 213 becomes law, convicted felons would be prohibited from collecting any damages if they're accidentally injured while fleeing from their crime.*" (Ballot Pamp., *supra*, at p. 50.)

Appellant asserts that he went to his girlfriend's house, a place of safety, after stealing the Datsun. He provides a single citation to the record to support this position. As respondents point out, the cited passage does not support the assertion. It does no more than show that after taking the car, appellant intended to see his girlfriend; it does not establish he actually went to the area of her house.

Nevertheless, as we have discussed, respondents did not establish as a matter of law that the shooting occurred during the immediate flight from the commission of a felony. The trial court erred in granting summary judgment on appellant's cause of action for negligence.

## III

Appellant also argues that application of section 3333.3 to his case is unconstitutional because it violates his right to due process guaranteed by California Constitution, article I, section 7, and the Fourteenth Amendment to the United States Constitution. His argument is that application of section

3333.3 to his claims is retroactive, because his injuries occurred before enactment of the statute. He claims that retroactive application of a statute is unconstitutional if it deprives him of a substantive right without due process of law. We address this argument for the guidance of the trial court on remand in light of our conclusion that summary judgment for respondents must be reversed.

The retroactivity of a statute is a matter of statutory construction. Here, Proposition 213 was explicit on the issue: "This act shall be effective immediately upon its adoption by the voters. Its provisions shall apply to all actions in which the initial trial has not commenced prior to January 1, 1997." (Ballot Pamp., *supra*, at p. 102.)

The retroactive application of section 3333.4, also enacted as part of Proposition 213 in 1995, has been upheld by the courts in *Yoshioka* v. *Superior Court, supra,* 58 Cal.App.4th 972; *Quackenbush* v. *Superior Court, supra,* 60 Cal.App.4th 454; and *Honsickle* v. *Superior Court, supra,* 69 Cal.App.4th 756. We are the first court asked to consider the retroactive application of section 3333.3.

■ "Courts addressing retroactive application of initiatives generally follow a two-step analysis. [Citation.] First, the court must determine whether the initiative has been retroactively applied. If so, the court must then decide if the people intended that the statute be so applied. Upon a finding of intent, the initiative may be enacted unless it is prohibited by state or federal constitutional provisions. (*Ibid.*)" (*Yoshioka* v. *Superior Court, supra,* 58 Cal.App.4th at p. 979.)

■ We think that the effective date provision of the proposition is a clear indication of intent to apply section 3333.3 retroactively to all cases that were not brought to trial before January 1, 1997. We turn to whether the retroactive application constitutes a deprivation of due process.

In *Hung* v. *Wang* (1992) 8 Cal.App.4th 908 [11 Cal.Rptr.2d 113], we considered the power of the state to limit access to the courts: "It is well established, however, that state legislative bodies retain the authority to determine what is and what is not an actionable tort, and to decide the conditions under which suits for these alleged wrongs will be entertained—so long as the statutes they enact are rationally based and do not draw constitutionally prohibited distinctions." (*Id.* at p. 921.)

We also cited *Martinez* v. *California* (1980) 444 U.S. 277 [100 S.Ct. 553, 62 L.Ed.2d 481] in *Hung* v. *Wang, supra,* 8 Cal.App.4th at page 922. In

*Martinez*, the Supreme Court upheld the immunity provision of the California Tort Claims Act (Gov. Code, § 815). In a footnote, the court rejected the plaintiff's argument that the provision giving parole officers absolute immunity is unconstitutional and must be subjected to strict scrutiny because it permits the deprivation of life, a fundamental right, without due process. The court reasoned: " '[T]he Legislature has broad powers to control governmental tort liability limited only by the rule it not act arbitrarily [citation]. The California Tort Claims Act as a whole (Gov. Code, § 810 et seq.) has been found constitutional [citation]. The stated purpose of section 845.8, subdivision (a), is to allow correctional personnel to make determinations of release or parole unfettered by any fear of tort liability [citation]. To impose tort liability would have a chilling effect on the decision-making process, impede implementation of trial release programs and prolong incarceration unjustifiably for many prisoners There is a rational relationship between the state's purpose and the statute.' [Citation.]" (444 U.S. at p. 282, fn. 6 [100 S.Ct. at pp. 557-558].)

In *Logan* v. *Zimmerman Brush Co.* (1982) 455 U.S. 422 [102 S.Ct. 1148, 71 L.Ed.2d 265], the Supreme Court explained its holding in *Martinez*: "Of course, the State remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether—just as it can amend or terminate its welfare or employment programs. . . . We acknowledged [in *Martinez* v. *California* (1980) 444 U.S. 277] that the grant of immunity arguably did deprive the plaintiffs of a protected property interest. But they were not thereby deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels. [Citations.] *In each case, the legislative determination provides all the process that is due* . . . ; it 'remain[s] true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational.' [Citation.]" (*Id.* at pp. 432-433, [102 S.Ct. at p. 1156], italics added.)

Proposition 213 is constitutional because the state may decide what injuries are compensable in a tort cause of action. Here an express rationale to support section 3333.3 was set out that is constitutionally valid. The Proposition states that insurance costs had ·skyrocketed because of claims made by felons under these circumstances. Section 2 of Proposition 213 provides: "(b) Californians must change the system that rewards individuals who fail to take essential personal responsibility to prevent them from

seeking unreasonable damages or from suing law-abiding citizens." (Ballot Pamp., *supra*, at p. 102.)

We conclude that there is a rational relationship between this stated purpose and section 3333.3, which provides immunity where the injuries to the felon are caused by negligence. There is no deprivation of due process.

Our conclusion is not altered by language in *Yoshioka* v. *Superior Court*, *supra*, 58 Cal.App.4th at page 972, cited by appellant. In *Yoshioka*, the court observed that the right to recover specific types of damages is not a vested right because such rights are created by state and common law independent of the Constitution. Since such rights are not constitutionally based, the *Yoshioka* court concluded: "[A] state and its people may alter such rights. Such alteration is only forbidden when at the very least the party is deprived of *every reasonable method of securing just compensation.* This does not encompass instances where the plaintiff would not recover as much as he would have had the former rule continued. (*Feckenscher* v. *Gamble* [(1938)] 12 Cal.2d 482, 499 [85 P.2d 885].)" (*Id.* at p. 982, italics in original.)

This passage from *Yoshioka* is dicta. *Feckenscher* v. *Gamble* (1938) 12 Cal.2d 482 [85 P.2d 885] dealt with a statutory change in the measure of damages for real estate fraud (section 3343). After the transaction was completed, but before the trial, the Legislature amended the statute. (12 Cal.2d at p. 499.) In dicta, the court in *Feckenscher* said: "The case of *Tulley* v. *Tranor* [(1878)] 53 Cal. 274 [2 Cal.Unrep. 43], holds unequivocally that no one has a vested right in a measure of damages. The court there said: 'We can conceive of no principle of constitutional law which is violated by a *change* in this rule, unless, at least, the new rule on its face deprives the party of every reasonable method of securing just compensation. No case has been referred to in which it has been held that to change an arbitrary and statutory rule of damages in cases of tort was a deprivation of any vested right of one who had previously suffered the wrong, and we can see no reason why it should be so held, even if it should be made to appear in a particular case that the plaintiff would not recover as much as he would have done had the former rule been continued.' " (*Ibid.*) *Feckenscher* was decided long before the enactment of immunity statutes, such as the California Tort Claims Act (Gov. Code, § 810 et seq.), which have withstood constitutional attack, despite barring a plaintiff from tort recovery. We think the analysis we adopted in *Hung* v. *Wang*, *supra*, 8 Cal.App.4th 908 is correct, and we decline to apply the dicta cited by appellant from *Yoshioka* v. *Superior Court*, *supra*, 58 Cal.App.4th at page 982.

## Disposition

The judgment is reversed. Appellant is to have his costs on appeal.

Vogel (C. S.), P. J., and Curry, J., concurred.