Opinion
 

 PHELAN, P. J.
 

 Proposition 213, adopted by the voters in November 1996, restricts damage recovery for certain categories of injured automobile owners and drivers in actions arising out of their use of motor vehicles. Specifically, two groups, (1) persons convicted of drunk driving (a term we use to include driving under the influence of drugs) for their conduct at the time of the injuries and (2) uninsured motorists, are excluded from noneconomic damages. A third group, felons committing or fleeing from crimes, is barred from all damages caused by the negligence of the other party. Responding to a constitutional attack upon the measure, the San Francisco County Superior Court has issued an injunction preventing expenditure of state funds to implement the uninsured motorist portions of Proposition 213.
 

 Charles Quackenbush, Insurance Commissioner of the State of California, Peter G. Stamison, Director of the Department of General Services, and Kathleen Connell, Controller of the State of California (referred to collectively as Quackenbush), ask us to vacate the superior court’s injunction and to bar further proceedings in the underlying action. We grant the requested relief. We are persuaded by the Second Appellate District’s analysis in
 
 Yoshioka
 
 v.
 
 Superior Court
 
 (1997) 58 Cal.App.4th 972 [68 Cal.Rptr.2d 553], upholding the measure, which we supplement with our own analysis of issues not addressed in
 
 Yoshioka.
 

 Facts and Procedural History
 

 On November 5, 1996, the voters approved Proposition 213, the Personal Responsibility Act of 1996, adding sections 3333.3 and 3333.4 to the Civil Code,
 
 [1]
 
 applicable to trials commencing after January 1, 1997. Section 3333.3 bars a plaintiff from recovering any damages based on negligence of
 
 *460
 
 the defendant if plaintiff’s injuries were “in any way proximately caused by the plaintiff’s commission of any felony, or immediate flight therefrom, and the plaintiff has been duly convicted of that felony.”
 

 Section 3333.4 covers both uninsured motorists and drunk drivers and addresses only noneconomic damages “to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniaiy damages.” Persons convicted of drunk driving are barred from noneconomic damages for any injuries sustained at the time of the drunk driving, and insurers are not required to indemnify them for such losses. (See
 
 id.,
 
 subds. (a)(1), (b), (c).) Uninsured owners cannot recover or be indemnified for noneconomic damages except those caused by drunk drivers. (See
 
 id.,
 
 subds. (a) (2), (b), (c).) Uninsured drivers cannot recover or be indemnified for noneconomic damages in any circumstance. (See
 
 id.,
 
 subds. (a)(3), (b), (c).)
 

 On December 17, 1996, the Congress of California Seniors, other consumer/taxpayer/citizen groups, and three individuals (referred to collectively as CCS) brought an action for an injunction and for declaratory relief. CCS alleged that Proposition 213 violated equal protection and due process under both the federal and California Constitutions, burdened the right to travel, and denied the targeted drivers the First Amendment right to petition government for redress of grievances. CCS objected to retroactive application of Proposition 213 and also claimed it violated California’s “one subject” restriction on initiative measures.
 

 
 *461
 
 On March 5, 1997, Quackenbush, represented by the California Attorney General, demurred to the complaint and opposed issuance of a preliminary injunction.
 

 On April 4, 1997, the superior court issued a preliminary injunction preventing the “defendants and their officers, agents, employees and all other persons acting on their behalf from any expenditure of State funds or resources for the purposes of implementing” the sections denying noneconomic recovery to uninsured owners and drivers and excusing insurers from indemnifying drunk drivers and most uninsured motorists for noneconomic damages.
 
 [2]
 
 The court also overruled Quackenbush’s demurrer.
 

 This petition and a related petition for writ of supersedeas, to stay the injunction pending appeal, followed. In that separate proceeding, we denied the supersedeas petition.
 
 [3]
 
 On July 11, 1997, we issued an alternative writ in this matter, interpreting Quackenbush’s petition as seeking to overturn both the preliminary injunction and the order overruling his demurrer. We have permitted the Association of California Insurance Companies and other concerned insurance organizations to appear as amici curiae, filing a single brief.
 

 The Superior Court’s Reasoning
 

 The superior court found that CCS was likely to prevail in its equal protection attack upon three sections of the measure. The court explained that Proposition 213 treats felons more favorably than uninsured motorists, denying felons recovery only when their injuries are proximately caused by their felonies or flights therefrom, whereas uninsured motorists commit only infractions and are denied recovery even when their injuries do not relate to the infraction of failing to secure insurance. The court noted a second inequity, that drunk drivers and fleeing felons are denied recovery only if they are convicted and that they can obtain compensation if they are not prosecuted or convicted or if they are permitted to plead guilty to misdemeanors. Uninsured motorists have no such escape hatches.
 

 The court’s third example of unfairness focused on the difference between section 3333.4, subdivision (a)(2), covering uninsured owners (who are not always drivers), and subdivision (a)(3), governing uninsured drivers (who are not always owners). Because of the wording of subdivision (c), an owner may obtain damages from a drunk driver whereas a driver who is not an
 
 *462
 
 owner may not. The court suspected a possible drafting oversight, but determined that the distinction had no rational basis and denied equal protection to the uninsured driver of a borrowed car.
 

 Contentions
 

 Quackenbush contends that, as economic legislation,. Proposition 213 is presumed to be constitutional and must be upheld because its provisions are rationally related to legitimate state interests. He argues that the classifications in economic legislation need not be perfect if the legislation is a rational means for promoting the state’s interests, which he contends it is. Quackenbush insists that Proposition 213 does not establish any unlawful classification based upon wealth, race or ethnicity or impermissibly discriminate against any class of tort victims. He also anticipates and addresses the other arguments presented below by CCS.
 

 CCS describes heartrending circumstances of particular plaintiffs whose cases might be affected by Proposition 213. Before acknowledging CCS’s appropriate legal arguments, we emphasize that it is not our role to second-guess the electorate’s decision that the benefits to the state outweigh hardships to individual plaintiffs adversely affected by the measure. Likewise, we do not evaluate CCS’s claim that Proposition 213 will not deter motorists from driving without insurance, an assertion that challenges the electorate’s judgment and was not subject to empirical proof before the measure went into effect.
 

 Stripped of the sometimes hyperbolic rhetoric, CCS’s constitutional arguments reduce to (1) supporting the superior court’s determination that three classes of tort victims are treated unfavorably in ways that seem irrational and do not further the state’s objectives, (2) contending that punishing uninsured motorists who are not at fault will not reduce insurance costs, (3) pointing to the unfairness of letting one who is at fault and uninsured benefit from an innocent driver’s failure to procure insurance, (4) mentioning other unfair distinctions, such as between tortfeasors who recklessly or intentionally injure uninsured motorists (immune) and those who injure fleeing felons with the same intent (liable), and (5) restating due process, right to travel, and other arguments made to the superior court.
 

 Amici curiae, taking a page from CCS’s brief, describe to us the plight of certain citizens injured by uninsured motorists. We reiterate that our focus is on the legality of the measure, not its wisdom, a point amici curiae acknowledge later in their brief.
 

 Amici curiae highlight a circumstance mentioned by the parties several times in passing and lightly noted by the superior court: Motorists are
 
 *463
 
 required by California law to obtain and carry proof of insurance or some other form of financial responsibility and to supply such proof when applying for vehicle registration. Amici curiae suggest that reducing tort recoveries is an appropriate extra penalty for breaking these laws. Amici curiae assert that Proposition 213 will reduce the cost of insurance and will benefit uninsured motorists by making insurance more affordable to them as well as to those presently insured. Amici curiae remind Proposition 213’s critics that the measure preserves economic damages for uninsured motorists and that noneconomic damages do not nullify pain and suffering, they only imperfectly compensate injured persons for it.
 
 [4]
 

 Yoshioka
 

 During the pendency of this proceeding, Division Seven of the Second Appellate District decided
 
 Yoshioka
 
 v.
 
 Superior Court, supra,
 
 58 Cal.App.4th 972
 
 (Yoshioka),
 
 upholding Proposition 213 against several of the claims presented here. We have examined
 
 Yoshioka,
 
 and conclude that its decision on prospective application of the measure is sound. We reject other arguments not discussed by the
 
 Yoshioka
 
 court. We do not address the retroactivity issue because we find CCS lacks the requisite standing to raise it. We issue a peremptory writ of mandate to compel the superior court to vacate its injunction and to sustain Quackenbush’s demurrer to CCS’s action.
 

 David Yoshioka was an uninsured motorist injured in an automobile accident before Proposition 213’s effective date. He claimed the defendants’ car rear-ended his, causing serious injuries. His case was set for trial after Proposition 213’s effective date and the superior court ruled,
 
 in limine,
 
 that Yoshioka could not present proof of noneconomic damages. Yoshioka filed a writ petition claiming that either retroactive or prospective application of Proposition 213 would violate due process and equal protection. The appellate court disagreed with each of Yoshioka’s arguments.
 
 (Yoshioka, supra,
 
 58 Cal.App.4th at pp. 979-992.)
 

 Reading the text of the initiative and noting the way it was presented in the ballot pamphlet,
 
 Yoshioka
 
 concluded that the voters intended retroactive application. The court then decided that retroactive application did not violate due process or equal protection, effectuated the purposes of the measure, and did not punish actions taken in reasonable reliance upon former law because drivers were required to purchase insurance long before Proposition 213 was adopted.
 
 (Yoshioka, supra,
 
 58 Cal.App.4th at pp. 982-989.)
 

 
 *464
 
 The court next addressed due process and equal protection barriers to prospective operation of Proposition 213. According to
 
 Yoshioka,
 
 the measure does not violate due process because applicability does not depend on a factual inquiry requiring a hearing. “Drivers either possess insurance or they don’t. If they don’t and they choose to drive (instead of using other alternative modes of transportation like public transit), we can think of no justifiable defense that would require a hearing.”
 
 (Yoshioka, supra,
 
 58 Cal.App.4th at p. 989.)
 

 Addressing equal protection,
 
 Yoshioka
 
 noted Proposition 213’s legitimate purposes of restoring balance to the justice system and reducing costs of mandatory automobile insurance. The court then concluded that eliminating noneconomic damages for uninsured motorists was rationally related to both interests because it would lead to reduced costs for insurance and to fewer lawsuits. “Further, as Proposition 213 encourages more uninsured drivers to buy auto insurance, tax-paying and law abiding citizens will no longer be required to carry the burden of paying for those citizens that choose to directly defy the current state of the law. It was rational for the electorate to believe that a classification that eliminates the uninsured would achieve a legitimate interest in restoring balance to our justice system.”
 
 (Yoshioka, supra,
 
 58 Cal.App.4th at p. 991.)
 

 Finally,
 
 Yoshioka
 
 concluded that Proposition 213 did not violate the “one subject” rule. Its subject was limiting recovery of noneconomic damages for drivers who break the law, a subject it addressed in three integrated parts, covering uninsured motorists, felons and drunk drivers.
 
 (Yoshioka, supra,
 
 58 Cal.App.4th at p. 993).
 
 [5]
 

 We agree with
 
 Yoshioka’s
 
 conclusions on due process, equal protection and the “one subject” issue. We express no opinion on retroactivity, which is not properly before this court.
 

 Although Quackenbush, CCS and amici curiae have addressed retro-activity, we conclude that these consumer/taxpayer/citizens lack standing to raise the retroactivity question. Unlike the prospective operation of Proposition 213, which will affect nearly all California adults and many other Californians, the retroactivity question affects primarily those uninsured plaintiffs who expect to bring pre-Proposition 213 cases to trial and those defendants who may object to evidence of noneconomic damages. Retroactivity, if imposed by Proposition 213, will have only a limited effect on this defined group of people for a relatively short period of time. It will have
 
 *465
 
 very little impact on taxpayers and insurance policy holders or on the general citizenry.
 
 (Fiske
 
 v.
 
 Gillespie
 
 (1988) 200 Cal.App.3d 1243, 1245-1246 [246 Cal.Rptr. 552].)
 

 An individual plaintiff like Yoshioka, facing the prospect of retroactive application of the statute, has a strong interest in defeating retroactivity and has the requisite standing. The consumer/taxpayer/citizens involved here are only slightly and academically concerned with the retroactivity issue.
 
 [6]
 
 Indeed, the weakness of CCS’s interest in the retroactivity question is reflected in its prayer for relief below. CCS sought a declaration that the uninsured motorist sections were invalid and an injunction against expending any resources to implement them. CCS made no alternative request to enjoin either retroactive application of the sections or spending money to implement them retroactively. If CCS’s challenge to prospective application of the statute is to terminate, as we conclude it must, we believe the retroactivity issue must expire with it.
 

 Issues Not Addressed by Yoshioka
 

 CCS has raised several arguments not answered by
 
 Yoshioka.
 
 We address them here.
 

 Anomalies in the Statutes
 

 CCS levels legitimate criticism against Proposition 213’s disparate treatment of different classes of motorists. Why, for example, should an uninsured owner be permitted to recover noneconomic damages from a drunk driver while an uninsured driver who is not an owner may not? And why must a drunk driver have been convicted in order for the uninsured driver to recover? Doesn’t this disfavor an uninsured owner in the situation where an obviously drunk driver dies from injuries sustained in the crash? Should felons committing or fleeing crimes and drunk drivers be excused from any Proposition 213 penalties if they avoid convictions, while uninsured motorists have no comparable leeway? Should tortfeasors (insured or not) who injure uninsured motorists, even recklessly or intentionally, be immune from noneconomic damages while tortfeasors who injure felons are immune only from damages caused by negligence? Should an uninsured owner be denied noneconomic damages when injured by a felon committing any crime other than drunk driving, no matter how serious the felony? CCS contends none of these anomalous distinctions furthers a legitimate state purpose; instead, they all demonstrate the irrationality of the statutory scheme.
 

 
 *466
 
 Only the “rational basis” test must be met when reviewing legislative classifications among personal injury plaintiffs.
 
 (Young
 
 v.
 
 Haines
 
 (1986) 41 Cal.3d 883, 899 [226 Cal.Rptr. 547, 718 P.2d 909]
 
 (Young).)
 
 When one class is treated differently from another, there must be “ ‘some rationality in the nature of the class singled out’ ”
 
 (Brown
 
 v.
 
 Merlo
 
 (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], quoting from
 
 Rinaldi
 
 v.
 
 Yeager
 
 (1966) 384 U.S. 305, 308-309 [86 S.Ct. 1497, 1499-1500, 16 L.Ed.2d 577]) and a “rational relationship between the legislative goal and the class singled out for unfavorable treatment”
 
 (Young, supra,
 
 41 Cal.3d at p. 900).
 

 Proposition 213’s primary classification was a division between the group of people who obey the law by purchasing automobile insurance, driving sober, and committing no vehicle-related felonies and the group of people who violate these driving-related laws and are disfavored because of their violations. CCS cannot reasonably argue that, when allocating the pool of insurance proceeds among members of these two groups, it is unfair or irrational to favor the law-abiding group or that it is irrational for the first group to be relieved of the obligation to pay insurance rates determined in part by the need to pay noneconomic damages (and in the case of felons all damages) to the second group.
 
 [7]
 

 Instead of focusing upon Proposition 213’s primary classification, the superior court directed its attention to perceived inequities in Proposition 213’s secondary classification scheme, an easier target. CCS now directs considerable attention to the differences in treatment between uninsured owners and drivers, the perceived advantages for felons and drunk drivers who avoid conviction, and the prospect that an innocent uninsured motorist would be unable to recover from a wealthy uninsured tortfeasor. CCS suggests that each of these distinctions or anomalies must be shown to be rationally related to the primary purposes of Proposition 213.
 

 We disagree. The secondary classification scheme addressed secondary objectives, balancing rights among members of the disfavored groups and
 
 *467
 
 facilitating determining which persons would be included in the disfavored groups. It reasonably accomplished these objectives and did not interfere with accomplishment of the primary objectives of the legislation. It was required to do no more.
 

 Instead of creating its own definition of a felon or a drunk driver and requiring a separate determination of guilt during the personal injury case, Proposition 213 reasonably premised membership in each group upon a criminal conviction. Proposition 213 apparently sought to favor uninsured motorists over felons and drunk drivers, a rational objective. It accomplished this in part (uninsured owners recover from drunk drivers, felons are denied all damages) but favored the latter groups in other ways (uninsured drivers who are not owners cannot recover from drunk drivers, felons and drunk drivers are exempted if not convicted). The measure is not rendered invalid because it imperfectly accomplished its secondary goals.
 

 CCS’s critique of the secondary classification scheme suggests ways to improve Proposition 213, such as by equalizing the treatment of uninsured owners and uninsured drivers, by allowing uninsured victims to recover directly from wealthy uninsured tortfeasors, and by permitting recovery against drunk drivers or felons without requiring conviction for those offenses. However, improving Proposition 213 is a legislative task, not one to be performed by the judiciary.
 

 Failure to Provide Procedures for Presenting Explanations or Excuses
 

 CCS describes Proposition 213 as an automatic forfeiture procedure which violates due process because it gives the plaintiff no opportunity to explain lack of insurance. CCS suggests that plaintiffs should be permitted to show why they are uninsured, whether they could not find affordable insurance and whether they mistakenly believed that coverage existed. CCS objects to this novel and severe penalty for being uninsured. CCS cites
 
 Bennett v. Bodily
 
 (1989) 211 Cal.App.3d 133 [259 Cal.Rptr. 199]
 
 (Bennett),
 
 for support of the claim a hearing of some kind is required.
 

 In
 
 Bennett,
 
 an uninsured motorist obtained an arbitration award for $13,500 against Bodily, based upon Bodily’s fault in an accident. Without Bennett’s participation, Bodily then recovered $15,000 from his carrier under his uninsured motorist coverage. Acting under compulsion of Vehicle Code section 17200, the superior court nullified Bennett’s arbitration award by subtracting Bodily’s larger insurance recovery from it. The
 
 Bennett
 
 court found this confiscation without a hearing to be unconstitutional.
 
 (Bennett, supra,
 
 211 Cal.App.3d at p. 135.)
 

 
 *468
 
 The key to Bennett's due process ruling was Vehicle Code section 17200’s attempt to override Bennett’s right to contest Bodily’s uninsured motorist recovery which, by statute, would take place only if Bennett were liable for damages.
 
 (Bennett, supra,
 
 211 Cal.App.3d at p. 142.)
 

 Unlike the statute in
 
 Bennett,
 
 Proposition 213 does not cause a forfeiture without providing an opportunity to contest the conditions leading to loss. Under Proposition 213, proof of insurance or financial responsibility is the determinative factor for recovering noneconomic damages. Although the statutes do not establish procedures for making this determination, courts may use their normal
 
 in limine
 
 or trial procedures to resolve the question for individual plaintiffs. An injured plaintiff will have a forum for proving compliance with financial responsibility laws and avoiding Proposition 213.
 
 [8]
 

 Denial of Reasonable Access to the Courts
 

 CCS raises the practical problem that plaintiffs affected by Proposition 213 will be unable to hire attorneys because attorneys’ contingency fees normally are paid from noneconomic damages, not money used to reimburse plaintiffs’ out-of-pocket losses. CCS contends uninsured drivers will be discriminated against in their access to courts based on economic situation, race and ethnicity.
 

 No extended analysis is required here. CCS’s attorneys’ fees argument implies that the present system for hiring and paying attorneys is sacrosanct and may not be disturbed. It assumes that uninsured litigants and attorneys will be unable to find other ways to structure their relationships. At most, CCS casts doubt on the wisdom of the measure, not its constitutionality.
 

 The same can be said about the argument that Proposition 213 discriminatorily bases court access upon economic situation, race and ethnicity. The measure does not require a litigant to purchase insurance before coming to court. It only reinforces California’s determination that paying the price for
 
 *469
 
 insurance is as much a part of owning and driving a car as are purchasing and registering the car and buying gasoline.
 
 [9]
 

 Denial of the Right to Travel
 

 Noting that realistic alternatives to automobile travel do not exist in some parts of California, CCS contends uninsured motorists are denied their right to travel by Proposition 213. Although CCS does not develop this claim here, it seeks to preserve the opportunity to do so at trial. CCS also suggests that Proposition 213 may chill entry into California by insured motorists from other states who might be considered uninsured drivers under Proposition 213.
 

 “Although no provision of the federal Constitution expressly recognizes a right to travel among and between the states, that right is recognized as a fundamental aspect of the federal union of states. ... [^D ... [U The right of intrastate travel has been recognized as a basic human right protected by article I, sections 7 and 24 of the California Constitution. [Citation.] . . . [^Q Neither the United States Supreme Court nor [the California Supreme Court] has ever held, however, that the incidental impact on travel of a law having a purpose other than restriction of the right to travel, and which does not discriminate among classes of persons by penalizing the exercise by some of the right to travel, is constitutionally impermissible. 0D . . . HD Moreover, lest we be understood to imply that an as applied challenge to [an] ordinance might succeed on the right to travel ground alone, we caution that, with few exceptions, the creation or recognition of a constitutional right does not impose on a state or governmental subdivision the obligation to provide its citizens with the means to enjoy the right.”
 
 (Tobe
 
 v.
 
 City of Santa Ana
 
 (1995) 9 Cal.4th 1069, 1096-1103 [40 Cal.Rptr.2d 402, 892 P.2d 1145], fn. omitted.)
 

 Government is permitted to regulate the conditions of travel by requiring drivers’ licenses, registrations, and compliance with a myriad of traffic laws. It may impose gasoline taxes, trucking regulations and agricultural inspection even when they inhibit travel. The insurance requirement and related penalties, including Proposition 213’s restriction on recovery by uninsured motorists, are no more onerous than these other travel regulations.
 

 Increasing the Punishment for Driving Without Insurance
 

 Responding to amici curiae, CCS notes that the penalty for driving without insurance is $500 to $1,000 with a potential for a one-year driver’s
 
 *470
 
 license suspension. CCS contends that Proposition 213 may not add a penalty out of proportion to the offense and may not impose the new penalty on only those uninsured motorists who are injured in automobile accidents. CCS suggests that other classes of drivers, those who habitually speed, those whose cars are unsafe, those who refuse to wear seat belts, should be included in any measure designed to reduce insurance costs. CCS also notes that Proposition 213 may provide a windfall for manufacturers of defective vehicles and products, with no accompanying savings for those who purchase automobile insurance.
 

 These arguments are presented to support CCS’s position that Proposition 213 is not rationally related to a legitimate state purpose. They present no viable constitutional law theories not addressed and rejected above. Proposition 213 is not rendered invalid because its restrictions do not extend to other drivers who disproportionately influence insurance costs or because nonmotorists may incidentally benefit from them.
 

 Conclusion and Disposition
 

 We have concluded that the superior court’s reasons for enjoining expending money to implement Proposition 213 were legally incorrect. Anomalies in the treatment of persons in the three classes of disfavored motorists do not render the legislation invalid. We have also rejected CCS’s other challenges to prospective operation of the measure. We have determined that a retroactivity challenge must be made in a case where retroactive application is actually threatened. It follows that the superior court erred in issuing its injunction and in overruling Quackenbush’s demurrer.
 

 Let a peremptory writ of mandate issue compelling the San Francisco County Superior Court to vacate its injunction and its order overruling Quackenbush’s demurrer and to enter a new order sustaining the demurrer without leave to amend. Costs in this proceeding are awarded to Quackenbush.
 

 Corrigan, J., and Parrilli, J., concurred.
 

 A petition for a rehearing was denied January 23, 1998, and the petition of real parties in interest for review by the Supreme Court was denied March 25, 1998. Mosk, J., was of the opinion that the petition should be granted.
 

 [1]
 

 All statutory references are to the Civil Code. Oddly, section 3333.4 appears twice in the Civil Code, the Legislature having adopted a first section 3333.4, governing pipeline corporations and oil spills, during its 1995 legislative session. (Stats. 1995, ch. 979, § 2.) The full
 
 *460
 
 text of section 3333.3 and of the second section 3333.4 follows. Section 3333.3 states: “In any action for damages based on negligence, a person may not recover any damages if the plaintiff’s injuries were in any way proximately caused by the plaintiff’s commission of any felony, or immediate flight therefrom, and the plaintiff has been duly convicted of that felony.” Section 3333.4 states: “(a) Except as provided in subdivision (c), in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [*1 (1) The injured person was at the time of the accident operating the vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense. [¡0 (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state. [H (3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state. ['U (b) Except as provided in subdivision (c), an insurer shall not be liable, directly or indirectly, under a policy of liability or uninsured motorist insurance to indemnify for non-economic losses of a person injured as described in subdivision (a). fiQ (c) In the event a person described in paragraph (2) of subdivision (a) was injured by a motorist who at the time of the accident was operating his or her vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense, the injured person shall not be barred from recovering non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages.”
 

 [2]
 

 The court left in effect the provisions barring felons and drunk drivers from recovering noneconomic damages and permitting uninsured owners to recover from drunk drivers.
 

 [3]
 

 Quackenbush
 
 v.
 
 Congress of California Seniors
 
 (June 17, 1997) A078529 (nonpub. opn.).
 

 [4]
 

 Amici curiae and CCS also debate whether poor people are more likely than others to be uninsured, an inquiry of limited relevance.
 

 [5]
 

 A dissenting justice disagreed with the majority on retroactivity and did not address the other issues.
 
 (Yoshioka, supra,
 
 58 Cal.App.4th at pp. 993-1001 (dis. opn. of Johnson, J.).)
 

 [6]
 

 Certain attorneys who are members of Consumer Attorneys of California may be somewhat more interested in the retroactivity question because they have clients whose cases may be affected. However, these attorneys have a better forum for raising the retroactivity issue.
 

 [7]
 

 CCS does assert that Proposition 213 will not cause uninsured motorists to buy insurance, that “balance” in the justice system cannot be attained by an improper singling out of one group, and that lower insurance rates could as easily be achieved by denying compensation to some other group of injured motorists. CCS also contends that the uninsured are improperly singled out because they are an “unpopular group.” CCS describes uninsured motorists who are accident victims as “innocent” and suggests that insured tortfeasors are less deserving of legislative support than their victims. It is clear, however, that Proposition 213 targeted uninsured motorists because of the group’s conduct in receiving the benefits of the insurance system without paying its admission price. The vote for Proposition 213 reflected disagreement with that conduct, not disapproval of a group of persons. The voters concluded that driving without insurance was not “innocent” and they impliedly tolerated negligent operation by motorists who purchased insurance to protect themselves from the financial consequences of their negligence. Neither legislative judgment was unreasonable.
 

 [8]
 

 The statutes mention no potential excuses for driving without insurance. Therefore proceedings to determine whether an individual plaintiff can afford insurance or whether affordable insurance is reasonably available are not required. Because the issue is not before us, we do not decide whether a plaintiff could employ a “de facto” insured theory to prove he or she reasonably believed insurance coverage existed. We make no comment on whether an inadvertently and unexpectedly uninsured plaintiff may avoid the restrictions of Proposition 213, other than to express extreme skepticism about
 
 Yoshioka’s
 
 suggestion that a mere attempt to buy insurance, “good faith or otherwise” (Yoshioka,
 
 supra,
 
 58 Cal.App.4th at p. 991) (whatever that means), would prevent the penalty.
 

 [9]
 

 CCS’s implication that forgoing driving is not an option for many poor families who cannot afford insurance indicts the geographic and economic structure of society, neither of which can excuse compliance with the law.