[No. B124363. Second Dist., Div. Two. Apr. 29, 1999.]

LOUIS MONTES, Plaintiff and Appellant, v.
THOMAS GIBBENS, Defendant and Respondent.

**COUNSEL**

Richard M. Laden and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

Parker Stanbury and Thomas Waddell for Defendant and Respondent.

**OPINION**

**MALLANO, J.**[*]—This matter presents the novel issue of whether Civil Code section 3333.4,[1] enacted by the voters as part of Proposition 213, prohibits recovery by an employee of noneconomic damages for injuries he received while driving his employer's uninsured motor vehicle. Plaintiff and

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All further statutory references are to the Civil Code unless otherwise indicated.

appellant Louis Montes (appellant) appeals from a judgment in his favor against defendant and respondent (respondent) Thomas Gibbens. Appellant contends that the trial court erred in ruling that Civil Code section 3333.4 applied to his case, thus denying him $69,411.07 in noneconomic damages.

## FACTUAL AND PROCEDURAL BACKGROUND

### The stipulations

The matter was tried on the following facts contained in two stipulations.[2] On January 3, 1996,[3] appellant and respondent were involved in a traffic collision. Respondent was entirely at fault. Appellant was driving his employer's motor vehicle while in the course and scope of his employment. His employer carried no liability insurance on the vehicle. At the time, appellant did not own an operable motor vehicle and did not have an "operator's policy" providing him coverage for driving a nonowned vehicle pursuant to Vehicle Code section 16452. As a result of the accident, appellant was hospitalized for three days with a diagnosis of a fractured left acetabulum, a right shoulder contusion, hematuria and concussion. He incurred medical bills in the sum $13,873.93 and a wage loss of $11,715 for a total of $25,588.93 in special damages. Appellant's general damages, including costs, amounted to $69,411.07. The matter was arbitrated and appellant was awarded $25,588.93. No general damages were awarded as the arbitrator concluded that they were barred by section 3333.4.

### The trial court's decision

The trial court determined that section 3333.4 was applicable and denied appellant an award of general damages, awarding only special damages in the amount of $25,588.93.[4]

---

[2]The stipulated facts are contained in two documents: "stipulation re agreed facts" and "stipulation re trial."

[3]Section 3333.4 became law effective November 5, 1996, when the voters passed Proposition 213. Proposition 213, in turn, provided that it shall apply to all actions in which the initial trial has not commenced prior to January 1, 1997. Trial of the matter at hand commenced on December 18, 1997.

[4]In rendering its decision, the trial court issued a written "opinion and specification of reasons for granting judgment on behalf of the plaintiff for special damages" in which it stated that "[T]he facts indicate that [appellant] could not have obtained a policy of insurance on his employer's vehicle by himself. He had no ownership interest in his employer's vehicle and it is unlikely that any automobile liability insurance would have issued a policy in [appellant's] name for a vehicle which he did not own. . . . [¶] . . . In this case, there is no evidence to show that [appellant] knew that his employer's vehicle was uninsured and therefore there would be no requirement for [appellant] to obtain this type of coverage." We

## Discussion

█ Appellant raises two issues on appeal: (1) whether section 3333.4 bars an employee's claim for general damages when injured while driving his or her employer's uninsured motor vehicle and (2) whether section 3333.4 may be applied retroactively to appellant's case.

Section 3333.4 provides, in pertinent part, that "in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] . . . [¶] (3) The injured person was the operator of a vehicle involved in the accident and the operator *can not establish his or her financial responsibility as required by the financial responsibility laws of this state.*" (Italics added.)

Appellant contends that California's financial responsibility laws (Veh. Code, § 16000 et seq.) did not require him, as an employee driving his employer's motor vehicle, to establish his financial responsibility. Respondent urges us to reject appellant's argument in this regard because it was not raised in the trial court. █ However, appellant is not foreclosed from raising this argument for the first time on appeal because it involves a new theory pertaining only to questions of law presented on undisputed facts. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) █ Respondent also contends that section 3333.4 on its face applies to appellant's case without reference to our state's financial responsibility laws. To agree with respondent, we would have to disregard the language of the statute making it applicable only where "the operator cannot establish his or her financial responsibility as required by the financial responsibility laws of this state." We cannot do so under the rules of statutory construction. (See *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224] [" 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' . . . '[A] construction making some words surplusage is to be avoided.' . . . Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of that statutory framework as a whole. . . ."].)

Accordingly, the task before us is to determine whether under the laws of this state an employee involved in an accident while driving his or her

take note that the stipulations do not address whether appellant could have obtained a policy of insurance on his employer's vehicle or whether appellant knew his employer's vehicle was uninsured. As the trial court's conclusions about appellant's lack of knowledge that the vehicle was uninsured and his inability to insure it went beyond the stipulated facts upon which the case was submitted, we disregard these conclusions and decide this appeal solely on the basis of the stipulated facts.

employer's uninsured vehicle must establish his or her financial responsibility. The answer can be gleaned from the totality of California's financial responsibility laws.

### 1. *Reporting obligation*

Vehicle Code section 16000 requires that the operator of a motor vehicle involved in an accident resulting in bodily injury to a person or property damage in excess of $500 report the accident to the Department of Motor Vehicles (department) within 10 days. However, Vehicle Code section 16002 provides that if the operator involved in such an accident was driving a motor vehicle owned or leased by his or her employer, then the operator shall report the accident to his or her employer within five days. In turn, within 10 days of the receipt of such a report, the employer must report the accident to the department. Respondent concedes, and we concur, that the employee is exempt from having to file an accident report with the department under these conditions.

### 2. *Evidence of financial responsibility*

Vehicle Code section 16020, subdivision (a) requires that the operator and owner of a motor vehicle must be able to establish financial responsibility pursuant to Vehicle Code section 16021 and must at all times carry in the vehicle evidence of the form of financial responsibility in effect for the vehicle. Vehicle Code section 16028, subdivision (a) provides that, upon demand of a peace officer, an operator of a motor vehicle on the highway must furnish evidence of financial responsibility for the vehicle. However, subdivision (d)(1) of that section provides that if the operator is driving a vehicle owned or leased by his or her employer, any citation issued for the operator's failure to provide evidence of financial responsibility "shall be issued to the employer rather than the driver, and the driver may sign the notice on behalf of the employer." Similarly, Vehicle Code section 16030, subdivision (a) makes it a misdemeanor to provide knowingly false evidence of financial responsibility to a peace officer or clerk of the court. However, subdivision (c) of that section provides that "This section does not apply to a driver who is driving a motor vehicle owned, operated, or leased by the employer of the driver and driven with the permission of the employer."[5]

### 3. *Establishing proof of financial responsibility to the Department*

Vehicle Code section 16050 provides that "In order to establish proof of financial responsibility every driver or employer involved in an accident and

---

[5]Although both Vehicle Code sections 16028, subdivision (d)(1) and 16030, subdivision (c) became operative January 1, 1997, and thus were not in effect as of the date of the accident in question, we note with some irony that section 3333.4 was not either.

*required to report such accident by Section 16000* shall establish to the satisfaction of the department that the provisions of this article are applicable to his [or her] responsibilities arising out of the accident." (Italics added.) Thus, only an operator who is required to report an accident pursuant to Vehicle Code section 16000 is obligated to establish proof of financial responsibility to the department. As we have observed, the operator of his or her employer's motor vehicle must report only to the employer who must in turn report to the department. It is clear that the language of section 16050, "required to report such accident," refers to the employer reporting to the department, and not the employee reporting to the employer. If this were not so, then both the employee and employer would be obligated to establish proof of financial responsibility to the department in the manner called for in Vehicle Code section 16050 et seq.[6] The use of the word *or* in the language of section 16050 imposing a responsibility on "every driver *or* employer" (italics added) evidences a legislative intent to free the employee from the obligation of establishing financial responsibility while driving an employer's motor vehicle.

## CONCLUSION

As we have seen, the Legislature has seen fit to exempt an employee who is involved in an accident while driving his or her employer's vehicle, from having to report the accident to the department, from being cited for failing to provide proof of financial responsibility to a peace officer upon demand, from criminal liability for furnishing false evidence of the financial responsibility of his or her employer, and, finally, from having to establish proof of financial responsibility to the department.[7] Given this clear evidence that the Legislature, in enacting our state's financial responsibility laws, intended that an employee operating his or her employer's vehicle need not establish

---

[6] There are many ways of establishing proof of financial responsibility. The most common one is by proof of liability insurance (Veh. Code, § 16054). Some of the other methods are by obtaining a certificate of self-insurance issued by the department (Veh. Code, § 16053) and by depositing cash with the department in the amount specified in Vehicle Code section 16056 (Veh. Code, § 16054.2).

[7] We also take note that the Legislature enacted Vehicle Code section 16000.8 in 1996, which provides that "if the failure of the driver of a motor vehicle involved in an accident to prove the existence of financial responsibility, as required by Section 16020, was due to the fraudulent acts of an insurance agent or broker" the department shall terminate any license suspension action if the driver furnishes documentation from the Department of Insurance of the fraud along with proof of the driver's current financial responsibility. Vehicle Code section 16000.8, subdivision (b) states: "It is the intent of the Legislature in enacting this section that individuals who are the victims of insurance fraud not be penalized for violating the financial responsibility laws when that violation was due to the fraudulent acts of others. . . ." Thus, where the failure to maintain insurance is the fault of an insurance agent or broker, the driver is not punished with a license suspension. Similarly, it would seem to follow that an employee should not be punished by denying him or her general damages where his or her employer is at fault by not insuring its vehicle.

his or her financial responsibility, we conclude that section 3333.4 does not apply to appellant's case. Accordingly, he should not have been denied general damages.

Our conclusion does not conflict with the spirit of Proposition 213. *Quackenbush* v. *Superior Court* (1997) 60 Cal.App.4th 454, 464 [70 Cal.Rptr.2d 271], in its discussion of *Yoshioka* v. *Superior Court* (1997) 58 Cal.App.4th 972 [68 Cal.Rptr.2d 553] (*Yoshioka*), states: "Addressing equal protection, *Yoshioka* noted Proposition 213's legitimate purposes of restoring balance to the justice system and reducing costs of mandatory automobile insurance. The court then concluded that eliminating noneconomic damages for uninsured motorists was rationally related to both interests because it would lead to reduced costs for insurance and to fewer lawsuits. 'Further, as Proposition 213 encourages more uninsured drivers to buy auto insurance, tax-paying and law abiding citizens will no longer be required to carry the burden of paying for those citizens that choose to directly defy the current state of the law. It was rational for the electorate to believe that a classification that eliminates the uninsured would achieve a legitimate interest in restoring balance to our justice system.' (*Yoshioka*, *supra*, 58 Cal.App.4th at p. 991.)" If the rationale for Proposition 213 is to "encourage[] more uninsured drivers to buy auto insurance," its application to appellant's case is off target as it is difficult to see how denying an employee noneconomic damages when involved in an accident operating his or her employer's motor vehicle will encourage the employer to buy motor vehicle insurance.

Respondent cites our recent opinion in *Goodson* v. *Perfect Fit Enterprises, Inc.* (1998) 67 Cal.App.4th 508 [79 Cal.Rptr.2d 102] (*Goodson*) for the proposition that if neither appellant nor his employer complied with the state's financial responsibility laws, the employer's vehicle was an "uninsured motor vehicle" and section 3333.4 applies. *Goodson* offers no assistance to respondent. There, we held that section 3333.4 did not apply to a wrongful death case brought by a widower whose spouse had been killed in an accident involving their vehicle, for which they did not carry insurance, but which was being driven by their daughter-in-law who was insured. *Goodson* did not involve an employee driving his employer's uninsured vehicle and has no application here.

With respect to the second issue raised by appellant, whether section 3333.4 may be applied retroactively to appellant's case, since we have concluded that section 3333.4 does not apply, we need not discuss the issue.[8]

---

[8]*Honsickle* v. *Superior Court* (1999) 69 Cal.App.4th 756 [82 Cal.Rptr.2d 36] and *Yoshioka, supra*, 58 Cal.App.4th 972 upheld a retroactive application of section 3333.4. Neither case involved an employee driving his or her employer's motor vehicle.

## DISPOSITION

The judgment is modified to include an award of general damages in the amount of $69,411.07. The judgment is otherwise affirmed. Appellant is awarded costs on appeal.

Boren, P. J., and Zebrowski, J., concurred.