90 Cal.Rptr.2d 308 (1999)
76 Cal.App.4th 293
Russell Glen DAY, Plaintiff and Appellant,
v.
CITY OF FONTANA et al., Defendants and Respondents.
No. E022011.
Court of Appeal, Fourth District, Division Two.
November 18, 1999.
Review Granted February 16, 2000.
*309 Law Offices of Wayne McClean, Evan D. Marshall and Wayne McClean, Los Angeles; Law Offices of J. Russell Brown, Jr., and Kevin Campbell, Los Angeles, for Plaintiff and Appellant.
Greines, Martin, Stein & Richland LLP, Kent L. Richland, Beverly Hills, and Dana F. Gardner, Los Angeles; Rinos, Shephard & Martin, LLP and Dimitrios C. Rinos, Santa Ana, for Defendant and Respondent City of Fontana.
Alan K. Marks, County Counsel, and Dennis M. Wagner, Deputy County Counsel, for Defendant and Respondent County of San Bernardino.

OPINION

HOLLENHORST, J.
A jury awarded plaintiff Russell Day nearly half a million dollars for his economic damages sustained in an automobile versus motorcycle accident. In this appeal, plaintiff does not contest his economic damages award. Rather, he contends the trial court erred in applying Proposition 213 retroactively to his failure to have liability insurance on his motorcycle, thus barring him from recovering any noneconomic damages against the County of San Bernardino ("County") and the City of Fontana ("City"). We affirm.

I.

FACTS AND PROCEDURAL HISTORY
The facts of this case are relatively simple and undisputed. On September 1, 1991, plaintiff was injured when his motorcycle was struck by a car driven by defendant William Honda. Plaintiff filed a complaint against William Honda, Irving Schwartz (the owner of the property adjacent to the intersection where the accident took place), the County and the City. As against the public entity defendants, plaintiff alleged causes of action for dangerous condition of public property and nuisance.
During discovery, defendants learned that plaintiff did not have liability insurance on his motorcycle as required by state law. On November 5, 1996, the voters passed Proposition 213, which prohibits uninsured drivers from collecting noneconomic damages, such as for pain, suffering and physical impairment, in any action arising out of the operation or use of a motor vehicle. (See Civ.Code, § 3333.4.) The County thereafter filed a motion in limine, joined by the City, to exclude any damages for pain and suffering. The trial court granted the motion on May 13, 1997.
On June 18, 1997, a jury found that plaintiff had suffered $454,574.21 in economic damages and allocated responsibility for those damages between William Honda, the County and the City. The trial court entered judgment on the basis of that verdict on November 19,1997.

II.

CONSTITUTIONALITY OF PROPOSITION 213
Plaintiff concedes Yoshioka v. Superior Court (1997) 58 Cal.App.4th 972, 68 Cal. Rptr.2d 553, and Quackenbush v. Superior Court (1997) 60 Cal.App.4th 454, 70 Cal. Rptr.2d 271, have rejected constitutional attacks on Proposition 213. In Yoshioka, the Second District concluded that Proposition 213 is constitutional both in its retroactive and prospective applications, and *310 specifically held that it does not violate the due process or equal protection clauses of the state or federal constitutions. The First District in Quackenbush agreed with the analysis in Yoshioka, holding that Proposition 213 is consistent with both due process and equal protection. Plaintiff claims, however, that Yoshioka and Quackenbush are "analytically flawed" and invites us to readjudicate the constitutionality of Proposition 213. We decline to revisit the issue.
However, we will address plaintiffs charge, raised during oral argument, that we did not address the penal nature of the statute, i.e., that the statute imposed a penalty for being uninsured by depriving uninsured motorists of full recovery  an issue he claims was not addressed by the Yoshioka court. We disagree with plaintiffs interpretation of Yoshioka. In our view, Yoshioka addressed the very argument advanced by plaintiff, albeit not in plaintiffs exact words.
In discussing retroactive application of Proposition 213, the Yoshioka court reasoned as follows: "Retrospective application of a statute is constitutional as long as it does not deprive a person of a substantive right without due process of law. [Citation.] Procedural due process applies only to vested rights. [Citation.] [Plaintiff] concedes that numerous courts have held that the right to recover specific types of damages is not a vested right because such rights are created by state and common law independent from the Constitution. [Citations.] Therefore, a state and its people may alter such rights. Such alteration is only forbidden when at the very least the party is deprived of every reasonable method of securing just compensation. This does not encompass instances where the plaintiff would not recover as much as he would have had the former rule continued. [Citation.]" (Yoshioka v. Superior Court, supra, 58 Cal. App.4th 972, 981-982, 68 Cal.Rptr.2d 553.)
Since there is no vested right to recover a specific type of damages, any "penalty" assertedly imposed when the electorate altered such rights did not violate due process because it was done in a manner that did not deprive plaintiff of all reasonable means of securing just compensation. "[Although [plaintiff] may not be able to recover as high a damage[ ] award as he would have prior to the initiative's passage, he still is legally entitled to some form of relief. Proposition 213 deprives [plaintiff] of a certain type of damages (noneconomic, i.e., pain and suffering), but [plaintiff] cannot claim that he is deprived of every reasonable method of securing just compensation. He is still able to obtain complete recovery for his economic damages." (Yoshioka v. Superior Court, supra, 58 Cal.App.4th 972, 982, 68 Cal. Rptr.2d 553.) As the Yoshioka court ultimately held, retroactive application of Proposition 213 is not inherently unfair inasmuch as California has long required drivers to purchase auto insurance. "Reliance upon the state of the former law is not a viable argument. Actions taken on the basis of the state of the former law should be identical to those taken in response to the new law." (Yoshioka, supra, at p. 985, 68 Cal.Rptr.2d 553 [rejecting petitioner's allegation that retroactive applications of initiatives are inherently unfair because they give no notice to those they later affect].)
We end this analysis by noting Yoshioka's commonsense statement that "uninsured motorists ... can easily avoid the penalty of not being entitled to noneconomic damages, by simply choosing alternative forms of transportation." (Yoshioka v. Superior Court, supra, 58 Cal. App.4th 972, 990, 68 Cal.Rptr.2d 553.) All said, we remain in agreement with Yoshioka and Quackenbush that Proposition 213 does not violate due process. (See also Savnik v. Hall (1999) 74 Cal.App.4th 733, 739, 88 Cal.Rptr.2d 417 [same]; and Honsickle v. Superior Court (1999) 69 Cal. App.4th 756, 765, 82 Cal.Rptr.2d 36 [same].)

*311 III.

APPLICATION OF PROPOSITION 213 TO CAUSES OF ACTION FOR DANGEROUS CONDITIONS OF PUBLIC PROPERTY AND NUISANCE AS AGAINST PUBLIC ENTITIES
The only new issue raised by plaintiff in this appeal is whether Proposition 213, or more precisely, Civil Code section 3333.4, which was enacted as part of Proposition 213, applies to preclude recovery of noneconomic damages under causes of action for dangerous conditions of public property and nuisance as against a public entity.[1] Applying the analysis in our Supreme Court's recent decision in Hodges v. Superior Court (1999) 21 Cal.4th 109, 86 Cal.Rptr.2d 884, 980 P.2d 433, we conclude that it does.[2]
In Hodges, plaintiff, an uninsured motorist, was injured when the borrowed 1967 Ford Mustang he was driving, which was also not insured, stalled on the freeway and was struck from behind by another car driving at a high speed. The impact ruptured the gas tank of the Mustang, located in the trunk, causing an explosion. Plaintiff sued Ford for compensatory and punitive damages, alleging that the gas tank in the Mustang was defectively designed. (Hodges v. Superior Court, supra, 21 Cal.4th 109, 112, 86 Cal.Rptr.2d 884, 980 P.2d 433.)
The trial court granted Ford's motion for summary adjudication of the punitive damages claim, ruling that Civil Code section 3333.4 precluded plaintiff from recovering punitive damages in his products liability action because it was undisputed that he was using and operating a motor vehicle at the time of the accident and that the accident would not have occurred had he not been so engaged. Plaintiff filed a petition for writ of mandate and the Court of Appeal summarily denied the writ. The Supreme Court granted review and held that the trial court erred because "[a] products liability claim against an automobile manufacturer falls outside the scope of Civil Code section 3333.4." (Hodges v. Superior Court, supra, 21 Cal.4th 109, 112-113, 86 Cal.Rptr.2d 884, 980 P.2d 433.)
The court reached this conclusion by first examining the meaning of the phrase "any action to recover damages arising out of the operation or use of a motor vehicle" as it appears in the statute. Finding the language less than pellucid, the court looked beyond the literal language of the provision to the voters' purpose, "as indicated in the ballot arguments and elsewhere." (Hodges v. Superior Court, supra, 21 Cal.4th 109, 113-114, 86 Cal. Rptr.2d 884, 980 P.2d 433.)
According to our Supreme Court, one of the primary aims of Proposition 213 "was to limit automobile insurance claims by uninsured motorists. The electorate wanted to ensure that uninsured motorists, who contribute nothing to the insurance pool, would be restricted in what they receive from it. This principle of fairness fueled the initiative. That right to recover fully for an injury caused by a design defect, even by an uninsured motorist, has no bearing on any principle of fairness having to do with the financial responsibility laws. *312 It is not clear that anyone  either the sponsors of the measure or the voters  intended to protect from products liability claims manufacturers who do not contribute to that pool or whose other insurance rates are not affected by the existence of uninsured motorists." (Hodges v. Superior Court, supra, 21 Cal.4th 109, 115, 86 Cal.Rptr.2d 884, 980 P.2d 433, italics omitted.)
This view was supported by Proposition 213's statement of legislative purpose, which "identif[ies] the principal intended beneficiaries of the measure as Californians who obey the financial responsibility laws. Thus, section 2 states the following `Findings and Declaration of Purpose': `(a) Insurance costs have skyrocketed for those Californians who have taken responsibility for their actions. Uninsured motorists ... are law breakers and should not be rewarded for their irresponsibility and law breaking. However, under current laws, uninsured motorists ... are able to recover unreasonable damages from law-abiding citizens as a result of ... accidents .... [¶] (b) Californians must change the system that rewards individuals who fail to take essential personal responsibility to prevent them from seeking unreasonable damages or from suing law-abiding citizens. [¶] (c) Therefore, the People of the State of California do hereby enact this measure to restore balance to our justice system by limiting the right to sue of ... uninsured motorists.' (Ballot Pamp., text of Prop. 213 as presented to the voters, Gen. Elec. (Nov. 5, 1996), at p. 102.)[3]" (Hodges v. Superior Court, supra, 21 Cal.4th 109, 115, 86 Cal.Rptr.2d 884, 980 P.2d 433.) Upon analysis of the above language, the court noted that "[t]here is no suggestion that the proposed law would also change the `system' with regard to products liability claims, or that any such change [was] needed. Moreover, use of the use words `Californians' and `law-abiding citizens' indicates that the initiative was aimed principally at providing balance for those who obey the financial responsibility laws, not benefitting manufacturers whose design and manufacturing processes are not subject to those laws." (Ibid.)
The court then turned to "Proposition 213's summary of arguments `pro' and `con' [which] also indicates that the statute was primarily intended to limit awards against insured drivers. It explains: `A yes vote on this measure means: ... uninsured motorists involved in collisions could recover only medical and out-of-pocket expenses but would be prohibited from recovering "pain and suffering" awards from insured drivers.' (Ballot Pamp., summary of arguments for and against ballot measures, as presented to the voters, Gen. Elec. (Nov. 5, 1996), at p. 7, second italics added.) It summarizes the arguments against the measure as follows: `[T]he Insurance Lobby's newest No-Fault scheme rewards reckless drivers who hit innocent poor people. Proposition 213 lets reckless drivers avoid responsibility. No-Fault for reckless drivers. The No-Faulters say we save millions. But nothing in Proposition 213 No-Fault lowers our insurance rates.' (Ibid.)" (Hodges v. Superior Court, supra, 21 Cal.4th 109, 116, 86 Cal.Rptr.2d 884, 980 P.2d 433.) Considering the ballot arguments as a whole, the court made an observation similar to the one above, namely that "[t]he arguments for and against the measure refer principally to remedying an imbalance in the justice system that resulted in unfairness when an accident occurred between two motorists  one insured and the other not. There is no suggestion that it was intended to apply in the case of a vehicle design defect." (Ibid., fn. and italics omitted.)
The court acknowledged that one of the purposes of Proposition 213 was to punish and deter drivers who fail to obey the financial responsibility laws by imposing *313 heavy costs for disobeying the law and creating an economic incentive for drivers to obey the law. At the same time, however, the court pointed out that "the express goal of the initiative statute was restoring balance to the system, not simple retribution.... There is no suggestion that such punishment or incentive was also intended  or should be permitted  to benefit manufacturers of defective vehicles, which are not reasonably included among `those who play by the rules' or `take personal responsibility' or `pick up the tab' for the `skyrocket[ing]' costs of automobile insurance. Thus, although it might theoretically also punish illegal behavior to limit recovery against all tortfeasors, neither the statutory language nor the ballot materials reflect an intent to reform a system `unfair' to law-abiding insured motorists by providing a windfall to manufacturers of defective vehicles. [¶] Indeed, such a windfall would appear inconsistent with the long-standing public policy goal of requiring manufacturers to bear the costs of injuries from defective products.... [¶] Nothing in the legislative history of the initiative suggests that the voters intended that result." (Hodges v. Superior Court, supra, 21 Cal.4th 109, 117, 86 Cal.Rptr.2d 884, 980 P.2d 433, fn. omitted.) The court thus concluded that "the limit on damages under Civil Code section 3333.4 does not apply to a products liability action brought by an uninsured motorist for injuries caused by a design defect." (Hodges, supra, at pp. 111-112, 86 Cal.Rptr.2d 884, 980 P.2d 433.)
The Hodges court expressly indicated its holding addressed only the narrow issue of whether Civil Code section 3333.4 "limits recovery of damages by an uninsured motorist in a products liability case" (Hodges v. Superior Court, supra, 21 Cal.4th 109, 114-115, 86 Cal.Rptr.2d 884, 980 P.2d 433) and offered no opinion on "the application of the Proposition 213 to actions by uninsured motorists or against other uninsured motorists or against state and local governments, e.g., for defective road design." (Hodges, supra, at p. 116, fn. 5, 86 Cal. Rptr.2d 884, 980 P.2d 433.) Nevertheless, the court noted that "such matters may implicate concerns distinct from products liability actions against automobile manufacturers. Thus, the ballot materials indicate that voter approval of Proposition 213 would `result in fewer lawsuits filed against state and local governments' and refer to `unknown savings to state and local governments as a result of avoiding these lawsuits.' (Legis. Analyst, analysis of Prop. 213, Ballot Pamp., Gen. Elect. (Nov. 5, 1996), at p. 49.)" (Hodges, supra, at p. 116, fn. 5, 86 Cal.Rptr.2d 884, 980 P.2d 433.)
Taking the cue from Hodges, we have examined the legislative history of Proposition 213 for evidence of voter intent regarding public entities. That examination reveals, in contrast to the absence of voter intent to have Proposition 213 apply to manufacturers of defective vehicles, the electorate expressly considered the effect the initiative would have on claims against state and local governments and intended that they too should benefit from application of Proposition 213. For example, the Summary of "What Your Vote Means" explains that the initiative would have a fiscal impact, albeit "probably minor," on state and local governments. (Ballot Pamp., Summary of "What Your Vote Means," Gen. Elec. (Nov. 5, 1996) p. 6.) Likewise, the Summary of Legislative Analyst's Estimate of Net State and Local Government Fiscal Impact states that there would probably be minor annual savings to state and local government in terms of courtrelated costs as well as a "[Reduction in insurance tax revenue to the state of probably less than $5 million annually." (Ballot Pamp., Legis. Analyst, analysis of Prop. 213, Gen. Elec. (Nov. 5,1996) p. 48.)
The analysis by the Legislative Analyst further advises that Proposition 213 would prohibit the recovery of noneconomic damages in certain car accident cases against the person, business, or government at fault for the injury. (Ballot Pamp., Legis. Analyst, analysis of Prop. 213, Gen. Elec, supra, p. 49.) "Restricting the ability of people to sue for injury losses in the *314 [specified] situations would reduce the number of lawsuits handled by the courts. This would reduce annual court-related costs to state and local governments by an unknown but probably minor amount. These restrictions would also result in fewer lawsuits filed against state and local governments. Thus, there would be an unknown savings to state and local governments as a result of avoiding these lawsuits." (Ibid., italics added.) The emphasized language demonstrates that reducing lawsuits against state and local governments was one of the express intents of the electorate in passing Proposition 213.
This interpretation is strengthened by an analysis of voter intent as to the portion of Proposition 213 applicable to felons, codified as Civil Code section 3333.3. According to one of the arguments in favor of Proposition 213, "Proposition. 213 takes the `profit' out of crime by closing a legal loophole that allows convicted felons to sue law-abiding citizens, businesses and governments to pay for `accidental injuries' incurred while running from their crime." (Ballot Pamp., arguments for and against Prop. 213, Gen. Elec. (Nov. 5, 1996) p. 50, second italics added.) The rebuttal to the argument against Proposition 213 similarly states "California law allows felons convicted of resisting a peace officer and causing serious injury or death to the peace officer to sue a city, county or anyone else who gets in their way and accidentally injures the felon fleeing from that crime.... Proposition 213 stops rewarding criminal behavior." (Id., at p. 51, underline added.) These portions of the ballot materials thus reiterate the electorate's intent to reduce lawsuits against government entities.
For the above reasons, we reject plaintiffs contention in his supplemental brief that "[n]othing in the ballot arguments or background implicates liability arising out of nuisance or dangerous premises...." We also reject plaintiffs claim that denying general damages here would not serve the express purpose of Proposition 213.
First, as we noted above, plaintiff was not denied general damages and in fact recovered nearly half a million dollars in economic damages under his theories of nuisance and dangerous condition of property. Second, denying plaintiff noneconomic damages here is consistent with Proposition 213's express goal, which, as plaintiff acknowledges, is "restoring balance to the system...." (Hodges v. Superior Court, supra, 21 Cal.4th 109, 117, 86 Cal.Rptr.2d 884, 980 P.2d 433.) According to the Hodges court, Proposition 213's "stated purposes of punishing illegal behavior and encouraging personal responsibility are emphatically directed at `reform[ing] an unfair system' with respect to law-abiding drivers who `pick up the tab'  i.e., those who `play by the rules' and take `personal responsibility' [citation] but have been required to `pay additional premiums to protect themselves from uninsured drivers' [citation]." (Ibid.) Because automobile manufacturers do not do any of the above, the Hodges court believed that a windfall would be created by applying Proposition 213 to manufacturers of defective vehicles. (Id., at pp. 117-118, 86 Cal. Rptr.2d 884, 980 P.2d 433.) In contrast, public entities, like insured drivers, are required to pay additional premiums or self-insure in order to protect themselves and cover the damage caused by uninsured drivers who cannot pay for the harm they cause to public property or public employees.[4] Thus, applying Proposition 213 to causes of action for dangerous condition of property and nuisance does not create a "windfall" for public entities but rather helps to restore "balance to our justice system" in a manner specifically contemplated by the voters in passing Proposition 213.
*315 Nor are we persuaded by plaintiffs remaining arguments. Plaintiff contends Proposition 213 should not apply to actions for dangerous conditions of public property because automobile insurance is not a factor in actions where the defendant is not a motor vehicle operator or in accidents resulting from defects in real property. Plaintiff reads the purpose of Proposition 213 far too narrowly. Although reducing the cost of mandatory automobile insurance is one of the objectives of Proposition 213, it is but one of many objectives, including "decreasing the number of lawsuits, reducing annual court-related costs to state and local governments, increasing the costs of drunk driving and disobeying California's Financial Responsibility Law, curtailing the commission of felonies and avoiding unreasonable damages being awarded to the uninsured." (Yoshioka v. Superior Court, supra, 58 Cal.App.4th 972, 983, 68 Cal.Rptr.2d 553.)
As for nuisance, plaintiff contends Proposition 213 is even less applicable because "[his] right under the nuisance claim is his right not to be free of the negligent operation of another vehicle or indeed any source of neglect but the right to unhampered and safe use of public highways." However, it is not plaintiffs right to assert a cause of action for nuisance that is at issue in determining the application of Proposition 213; rather, the issue is whether the electorate in passing Proposition 213 intended that plaintiff, as an uninsured motorist, should have the right to recover noneconomic damages in an action for nuisance against a public entity. Given our analysis above, we conclude the answer is no.
In conclusion, as counsel for the County notes, under plaintiffs reasoning, any uninsured motorist plaintiff in any given lawsuit against a public entity would be able to circumvent Proposition 213 and recover unlimited noneconomic damages simply by pleading certain theories of liability in the lawsuit. We agree that in passing Proposition 213, the electorate certainly did not intend to allow creative pleading to circumvent its implementation. To the contrary, given the voter intent elucidated above by the ballot materials that Proposition 213 was intended to apply to actions against state and local governments, we hold that Proposition 213 precludes plaintiff, an uninsured motorist, from recovering noneconomic damages in an action for dangerous condition of public property or nuisance against a public entity.

IV.

DISPOSITION
The judgment is affirmed. Respondents are to recover their costs on appeal.
RAMIREZ, P.J., and McKINSTER, J., concur.
NOTES
[1] The issue is not, as plaintiff states it, whether an uninsured motorist may allege causes of action for dangerous condition of public property and nuisance against a public entity. Indeed, plaintiff prevailed on his causes of action for dangerous condition of public property and nuisance against the County and City, thus entitling him to almost half a million dollars in economic damages allocated between the County, City, and William Honda. Rather, the issue is whether, under those theories, an uninsured motorist such as plaintiff may recover noneconomic damages against a public entity.
[2] The Supreme Court issued its opinion in Hodges after briefing in this case had been completed. Pursuant to our request, the parties submitted supplemental briefing on the applicability of Hodges. Predictably, plaintiff argues Hodges allows him to recover noneconomic damages under his causes of action for dangerous condition of property and nuisance while defendants argue otherwise.
[3] On March 2, 1999, we reserved ruling, for decision with this appeal, on the City's request to take judicial notice of portions of the November 5, 1996, General Election Ballot Pamphlet. We now grant the City's request for judicial notice.
[4] As noted by the City, claims filed by municipalities as a result of actions filed against them have increased so dramatically that in many parts of California commercial insurance carriers have refused to insure them. (See City of South El Monte v. Southern Cal. Joint Powers Ins. Authority (1995) 38 Cal. App.4th 1629, 1633, 45 Cal.Rptr.2d 729.)